# United States Court of Appeals
## For the First Circuit

No. 10-1930

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM VÁZQUEZ-RIVERA,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Torruella, Boudin, and Dyk,[*]
Circuit Judges.

Martin G. Weinberg, with whom Kimberly Homan, were on brief for appellant.

Jenifer Y. Hernández-Vega, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, were on brief for appellee.

December 22, 2011

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** William Vázquez-Rivera ("Vázquez") was charged with (1) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (2) three counts of transportation of child pornography via computer in interstate and/or foreign commerce in violation of 18 U.S.C. § 2252(a)(1), and (3) two counts related to use of the internet in order to transfer obscene matters to an individual the appellant knowingly believed to be under the age of sixteen in violation of 18 U.S.C. § 1470.[1] On February 12, 2010, a jury found Vázquez guilty of all counts against him. Vázquez now appeals his conviction mainly on the grounds that the government's conduct and use of improper testimony at trial warrant the reversal of his conviction. In addition, Vázquez claims that the district court erroneously refused to admit parts of an investigative form memorializing portions of an interview with his son that he alleges contained exculpatory evidence. Vázquez also argues that the prosecution made improper remarks during its opening statement and closing argument that constituted prejudicial plain error. We agree with Vázquez that the prosecution's case against him at trial extensively relied on improper testimony. Accordingly, we reverse and vacate Vázquez's conviction.

---

[1] The indictment against Vázquez also included a forfeiture allegation under 18 U.S.C. § 2253.

-2-

# I.  Background and Procedural History

In April 2008, Agents of the Federal Bureau of Investigation ("FBI") began an operation in which they went online posing as a Puerto Rican fourteen-year-old girl.  Entering LatinChat.com, a Spanish speaking chatroom, Special Agent Edward Cabral ("Agent Cabral") and Special Agent Christine Segarra ("Agent Segarra") went undercover using the screen name "Patsychula14."[2] Agent Cabral served in an advisory role, while Agent Segarra assumed the Patsychula14 identity.  On April 16, 2008, Agent Segarra was online as Patsychula14 when an individual using the screen name "IncestoPR" initiated an online conversation with her. IncestoPR inquired about her age -- which Agent Segarra said was fourteen -- and chatted about subjects including incest and sexual relationships between adults and minors.  IncestoPR eventually gave Patsychula14 his email address, bienhotpr@hotmail.com,[3] and the chat continued on MSN Messenger, an instant messaging program, with IncestoPR now communicating with the screen name "Secreto."[4]

---

[2]    The screen name is a combination of "Patsy," the online persona's nickname, the word "chula," which translates to English as "sexy" or "cute," and "Patsy's" age -- i.e., fourteen.

[3]    "Bienhotpr" may be translated as "'very' hot pr," with "pr" being a likely reference to Puerto Rico.

[4]    "IncestoPR" translates from Spanish as "IncestPR," with "PR" again being a likely reference to Puerto Rico.  In Spanish, "Secreto" means "Secret."

Over the course of the next three months, Secreto initiated eight chat sessions with Patsychula14. Secreto discussed sexual themes and sent Patsychula14 pictures depicting child pornography. During a messaging session on June 5, 2008, Secreto also sent Patsychula14 a webcam video of a man masturbating, which Secreto said was himself. In the video, Agent Segarra and Agent Cabral were able to see a man wearing red flannel pajamas, his hands and genitalia, and part of the room in the background. However, the agents were not able to see the man's face.

In a final chat session on July 2, 2008, Patsychula14 asked Secreto if he resided in Camuy, Puerto Rico, which Secreto then acknowledged. Agent Segarra also asked if Secreto's real name was "William," to which Secreto responded "no . . . José." Secreto then ceased all communication.

As part of its investigation, the FBI issued a subpoena to Microsoft in order to obtain the subscriber information corresponding to the bienhotpr@hotmail.com email address and associated internet protocol ("IP") address.[5] Armed with the relevant IP address, agents subpoenaed Liberty Cable, the address's owner, requesting additional subscriber and account information.

---

[5] "An IP address is the unique address assigned to every machine on the internet. An IP address consists of four numbers separated by dots, e.g., 166.132.78.215." In re Pharmatrak, Inc., 329 F.3d 9, 13 n.1 (1st Cir. 2003).

This subpoena yielded Vázquez's name and an address in Camuy, Puerto Rico.

On August 22, 2008, FBI agents -- including Agent Cabral and Agent Segarra -- executed a search warrant on Vázquez's residence.[6] When the agents arrived, Vázquez answered the door wearing red pajamas which testimony at trial suggested were similar to those Agent Cabral and Agent Segarra observed in the masturbation webcam video Secreto had sent Patsychula14. Tile found in the residence and a chair and filing cabinet found in Vázquez's office also were similar to those Agent Cabral and Agent Segarra observed in the webcam video.

Computers seized at Vázquez's residence contained over one-hundred images of child pornography -- including the two sent to Patsychula14 -- as well as cartoons relating to incest found in password-protected subdirectories labeled "William." Forensic analysis of Vázquez's primary desktop computer showed memory relating to screen names "Secreto" and "IncestoPR." Two images found on Vázquez's computer also matched two profile pictures used during the chats.

Based on this information, a grand jury returned an indictment charging Vázquez with the above-referenced six counts.

---

[6] This was the second search warrant that the government executed in connection with this investigation. A few days earlier, FBI agents executed a search warrant on a residence they mistakenly identified as belonging to Vázquez.

Vázquez pled not guilty and a five-day jury trial was held in February 2010. Agent Cabral and Agent Segarra both testified as two of the government's five witnesses. Opening the government's case against Vázquez, Agent Cabral described the steps taken in the investigation. The government then called Microsoft and Liberty Cable custodians, who testified on the subscriber information and company records the government used to obtain a search warrant for Vázquez's residence. As the fourth government witness, Agent Segarra then described the online sting operation in greater detail and read transcripts of several chats she had with the individual using the Secreto and IncestoPR screen names. As the final government witness, Agent Hesz Rivera, the FBI forensic examiner who reviewed the seized computers, offered testimony regarding his findings. Among other evidence, the jury was allowed to see the online conversations between Agent Segarra and Secreto, relevant child pornography images, and the webcam video of the masturbation incident.

The defense focused its efforts on trying to show that the prosecution could not conclusively link Vázquez to the chats and contended that the government could not prove Vázquez knew the home computers contained child pornography. On direct, Vázquez's wife offered testimony explaining that all four family members

residing in the home had access to the seized computers,[7] including the desktop computer containing the pictures sent to Patsychula14. Vázquez's wife also testified that a housekeeper had keys to the residence and that her children and her grandchildren -- including a nineteen-year-old male named Mario and two older adult males named José and Luis -- could access the home, even in the family's absence. During cross-examination of Agent Cabral, counsel also presented evidence that various IP addresses were used to access the email account used to communicate with the Patsychula14 decoy, one of them registered to an owner by the name of José Acevedo. Agent Cabral testified that the government did not investigate these addresses.

On February 12, 2010, the jury returned a verdict finding Vázquez guilty as to all counts of the indictment. This timely appeal followed.

## II. Discussion

Vázquez challenges his conviction on several grounds. Vázquez's primary contention is that the district court erred when it admitted much of Agent Segarra's testimony, which Vázquez alleges was improper, and impermissible opinion regarding his guilt. Vázquez also contends that the district court erred when it did not admit portions of an FBI form related to an interview with

---

[7] Vázquez resided with his wife, his sixteen-year-old son, and his ten-year-old daughter.

Vázquez's son.  Finally, Vázquez claims that statements made during the prosecution's opening and closing remarks were improper and amounted to plain error.  Because we agree with Vázquez that a troublingly large amount of Agent Segarra's testimony was improper, we reverse on those grounds and do not find it necessary to address his other claims.  As we must, we consider the facts in the light most favorable to the verdict.  United States v. Stevens, 640 F.3d 48, 49 (1st Cir. 2011).

## A.  Improper Overview Testimony

Vázquez argues, based on several of our recent cases, that much of Agent Segarra's testimony amounted to improper overview testimony.  See, e.g., United States v. Meises, 645 F.3d 5 (1st Cir. 2011); United States v. Flores-de-Jesús, 569 F.3d 8 (1st  Cir. 2009); United States v. Casas, 356 F.3d 104 (1st Cir. 2004).  The problematic form of this testimony consists of declarations by a witness -- commonly a law enforcement officer involved in the investigation at issue -- presented early during trial to describe the government's general theory of the case.  See Meises, 645 F.3d at 14 n.13 (noting such evidence "often provides an anticipatory summary of the prosecution's case by previewing the testimony of other witnesses").  We have denounced the use of this kind of testimony "in which a government witness testifies about the results of a criminal investigation, usually including aspects of the investigation the witness did not participate in, before the

-8-

government has presented evidence." United States v. Rosado-Pérez, 605 F.3d 48, 55 (1st Cir. 2010). In doing so, we have noted that the problems inherent in such testimony are patently clear "if the evidence promised by the overview witness never materializes," but have warned that even if the substance of the witness's preview is later corroborated during trial, the overview testimony of a law enforcement agent still represents a problematic "endorsement of the veracity of the testimony that will follow." Flores-de-Jesús, 569 F.3d at 18; see also id. at 17-19 (discussing this "imprimatur problem" at length).[8]

While our decision today in no way detracts from our prior admonishments regarding overview testimony, we believe that

---

[8] Our cases have not, however, foreclosed the use of overviews entirely. Subject to the overarching precept that lay witness testimony should be grounded on personal knowledge, we have acknowledged "[t]here may be value in having a case agent describe the course of his investigation in order to set the stage for the testimony to come . . . ." Flores-de-Jesús, 569 F.3d at 19. We have also recognized that "if properly limited to constructing the sequence of events in [an] investigation," an agent's testimony "could be valuable to provide background information and to explain how and why the agents even came to be involved with the particular defendant." Id. (citations and quotation marks omitted). Finally, our cases have also recognized that the complexity of a given case may play a role in helping to determine whether such descriptive testimony is appropriate. Id. (citing case involving money laundering and tax evasion charges to note "we have explicitly distinguished between the kind of 'overview' testimony that we [have criticized]" and an IRS agent's testimony proffered as a "'description of his investigation' into the defendant's activities, which [was] based on personal knowledge" (citing United States v. Hall, 434 F.3d 42, 57 (1st Cir. 2006))); see also Hall, 434 F.3d at 57 ("summary testimony" introduced towards the end of trial "permissible to summarize complex aspects of a case").

-9-

the trial declarations at issue here can be distinguished from the ones we considered problematic in those cases.  In the instant case, Agent Segarra took the stand as the government's penultimate witness on the first day of a five-day trial and, as such, did not "preview" the government's case.  See United States v. Hall, 434 F.3d 42, 56-57 (1st Cir. 2006) (noting appellant's reliance on cases discussing overview testimony "misplaced" where testimony in question proffered "near the end of the government's case-in-chief").  However, as we now explain, we still find that much of Agent Segarra's testimony bore distinct and serious deficiencies and should not have reached the jury.

## B.  Agent Segarra's Improper Testimony

Vázquez challenges six specific portions of Agent Segarra's testimony.  Where counsel properly objected to and preserved testimony for appellate review, we usually review for abuse of discretion.  Hall, 434 F.3d at 56-57.  However, because defense counsel did not object to, or otherwise failed to preserve, much of the testimony on which Vázquez now bases his appeal, we review most of the challenged portions of Agent Segarra's testimony only for plain error.  United States v. Flemmi, 402 F.3d 79, 86 (1st Cir. 2005).  Where we review for plain error, we ascertain whether "(1) an error occurred (2) which was clear or obvious and which not only (3) affected [] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of

-10-

judicial proceedings." Id. (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001) (alterations omitted)).

## 1. Initial Identification Testimony

Shortly after Agent Segarra took the stand during the first day of trial, the prosecution asked her, with regards to the investigation, whom the investigation identified as the individual using the screen name "IncestoPR." Agent Segarra responded: "We ended up identifying him as William Vazquez Rivera." At the prosecution's request, Agent Segarra proceeded to describe the conversations that she had with IncestoPR while posing as a fourteen-year-old girl using the screen name Patsychula14.

Although the defense did not object to these statements at trial, Vázquez now claims that this testimony was admitted in error. We agree. By identifying Vázquez as IncestoPR, the person who "approached" Agent Segarra's online avatar and continued to chat with her using the Secreto screen name, Agent Segarra addressed the ultimate issue before the jury: whether the conduct the government observed on its end of the computer screen could be imputed to Vázquez. Because the government agents conducting the investigation that led to Vázquez's arrest did not directly observe the individual chatting with Agent Segarra, Vázquez's fate depended on whether the government could prove to the jury beyond a reasonable doubt that the evidence it had against him -- most of

-11-

which was circumstantial in nature[9] -- placed him at the other end of these online conversations.  While ultimate issue opinions are not always prohibited, lay testimony of this nature must comport with the requirement that proffered testimony be helpful to the jury.  See Fed. R. Evid. 701(b); see also United States v. García, 413 F.3d 201, 214 (2d Cir. 2005) ("If such broadly based opinion testimony as to culpability were admissible under Rule 701, 'there would be no need for the trial jury to review personally any evidence at all.'" (quoting United States v. Grinage, 390 F.3d 746, 750 (2d Cir. 2004)).  On these facts, we are compelled to reaffirm our warning that lay opinions going to the ultimate issue will rarely meet this requirement, "since the jury's opinion is as good as the witness's."  United States v. Sanabria, 645 F.3d 505, 516 (1st Cir. 2011)(quoting Mitroff v. Xomox Corp., 797 F.2d 271, 276 (6th Cir. 1986)).

Agent Segarra's testimony was also improper because her statements were based in large part on the overall investigation rather than her personal observations.  See Fed. R. Evid. 602, 701(a); see also Rosado-Pérez, 605 F.3d at 55 (noting "basic principle in the Federal Rules of Evidence that witnesses, other

---

[9]  At oral argument, the government correctly acknowledged that the only piece of direct evidence introduced in the prosecution's case against Vázquez came when Agent Segarra testified about what she observed in the webcam video of the masturbation incident.  As we explain below, however, while portions of this testimony were proper, we find that much of it amounted to improper identification evidence not grounded in personal knowledge.

than experts giving expert opinions, should testify from personal knowledge").  Despite being closely involved in all aspects of the underlying investigation, Agent Segarra never personally observed Vázquez chatting on the seized computers on the mentioned dates, nor, for example, was her testimony based on surveillance of the premises that would place Vázquez inside the residence with the computer at the time the chats occurred.  Cf. Rosado-Pérez, 605 F.3d at 55-56 (concluding testimony proper where investigator witness "went to [drug point] at least fifty times; and repeatedly participated in video and personal surveillance, wiretap surveillance, and controlled drug buys").

The only opportunity Agent Segarra had to directly observe conduct at issue in Vázquez's trial came during the chat she had with Secreto on June 5, 2008.  During that online conversation, Agent Segarra was able to observe the webcam video that Secreto sent and discerned an adult male masturbating. According to her later testimony, however, Agent Segarra was only able to see the man's hands and genitals, as well as the red pajamas he wore and parts of the room in the background.  At no point did Agent Segarra see the man's face, hear the man speak, or otherwise observe distinguishing marks on the man's body.[10]  Even

---

[10]  At trial, the prosecution requested and received permission to photograph Vázquez's "genital area and hands" for the purpose of comparing any resulting pictures with the webcam video of the masturbation incident.  For reasons the record does not reveal, the prosecution opted not to use these images.

if that limited opportunity for personal observation would support an identification of Vázquez as the individual in the video, her purported identification was largely based on other evidence that could not support such an identification based on personal knowledge. Here, we cannot say that Agent Segarra's identification testimony was "rationally based on the witness's perception" as the evidentiary rules command. Fed. R. Evid. 701(a).

We pause to highlight a related concern that will unfortunately surface again in our discussion infra. In responding to the prosecutor's questions in the manner she did -- i.e., "we ended up identifying [the subject] as William Vazquez Rivera" -- Agent Segarra implied that her comments expressed the combined opinion of both her and other unidentified officers, based on the totality of similarly-unidentified information gathered over the course of the investigation, that the defendant on trial was the person who sent the illicit material and was therefore guilty. We stress our disapproval of such testimony at trial and agree with the Second Circuit, writing in United States v. García, that:

> [W]hen an agent relies on the "entirety" or "totality" of information gathered in an investigation to offer a "lay opinion" as to a person's culpable role in a charged crime, he is not presenting the jury with the unique insights of [a witness's] personal perceptions. Thus, in such circumstances, the investigatory results reviewed by the agent -- if admissible -- can only be presented to the jury for it to reach its own conclusion.

-14-

413 F.3d 201, 212 (2d Cir. 2005) (internal citation omitted). The situation is all the more worrisome where, as here, an agent's testimony appears to at least partly rest on the collective insight of other unknown investigators who may not themselves be present at trial. While such a composite perspective is permissible in other non-trial contexts,[11] those circumstances are not delimited by the trial-applicable Rule 701 requirement that lay opinion be based on personal perceptions.[12] See id. at 213; see also United States v. Dukagjini, 326 F.3d 45, 54 (2d Cir. 2003) ("As the testimony of [a] case agent moves . . . to providing an overall conclusion of criminal conduct, the process tends to more closely resemble the

---

[11] See, e.g., United States v. Lamela, 942 F.2d 100, 104 n.5 (1st Cir. 1991) (noting it is common in grand jury context for government "to present an overview of the criminal investigation through the testimony of the case agent, rather than through the testimony of [] investigating officers").

[12] Referring to Agent Segarra's repeated use of the plural "we" when speaking about the government's investigation and its results, the government concedes that Agent Segarra "could have used a better term." Nevertheless, the government posits that Agent Segarra's articulation in the plural was proper, as it accounted for the fact that Agent Segarra conducted the investigation in conjunction with Agent Cabral, who had already testified as a government witness. While plausible, the government's ex-post-facto rationalization of Agent Segarra's use of the plural form is unavailing. If Agent Segarra meant to allude to Agent Cabral or his views in her testimony, this should have been made clear at trial. Neither here nor in the exchanges we examine below did the questioning Assistant U.S. Attorney seek to clarify this point before the jury. Thus, when Agent Segarra represented that "we concluded 'X'," she invoked the opinions of an unknown number of additional agents without explaining what those opinions were or, for that matter, whether they were grounded on personal perceptions or on evidence before the jury.

-15-

grand jury practice, improper at trial, of a single agent simply summarizing an investigation by other that is not part of the record.").

### 2. Identification Testimony on Second Day of Trial

During the course of the first and second days of trial, Agent Segarra described the chats that she, posing as Patsychula14, had with the individual using the screen name Secreto on the MSN Messenger platform. Agent Segarra's testimony during the second day of trial focused on conversations she had with Secreto over the course of several days during the spring of 2008. Reading from chat transcripts at the prosecution's behest, Agent Segarra narrated conversations of a strong sexual nature in which Secreto repeatedly alluded to incest and sexual acts between adults and children, sent several images containing child pornography, and incited Patsychula14 to engage in sexual conversations over the phone.

After Agent Segarra read to the jury the text of chats between Patsychula14 and the individual named Secreto on April 28, 2008, May 20, 2008, May 22, 2008, May 27, 2008, and May 29, 2008, the prosecution sought to clarify that the person using the Secreto screen name on MSN Messenger was also behind the bienhotpr@hotmail.com email account and the IncestoPR screen name used in the LatinChat.com chat room. At this point, the following exchange between the prosecutor and Agent Segarra took place:

Q: And just to make -- to clarify, IncestoPR is the same person as Secreto, correct?

A: Correct.

Q: And Secreto is the same person at Bienhotpr@hotmail.com?

A: Correct.

Q: And throughout your investigation, who did you identify that person to be?

. . . .

A: We identified him as William Vazquez-Rivera.

Counsel objected during this exchange on grounds that the question had already been answered several times, but the district court allowed the testimony, noting Agent Segarra could be cross-examined on these statements. Because Vázquez now challenges this testimony on grounds that it was improper, we review for plain error. See United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011) (concluding appellant's "argument in the district court is sufficiently different from the one raised on appeal that the argument is forfeited and will be reviewed for plain error").

This testimony should not have reached the jury. Again, Agent Segarra's statements bear many of the deficiencies we have already discussed. Firstly, Agent Segarra's declaration that Vázquez was identified as the person with whom she conversed as Patsychula14 "throughout the investigation" expressed conclusions about Vázquez's culpability, thus implicating the ultimate issue-

variety Rule 701 concerns noted above. Second, Agent Segarra's testimony did not evince whether this identification was based on evidence or testimony before the jury and appeared to subsume the perceptions or insights of other agents into her testimony. See Casas, 356 F.3d at 119.

### 3. Testimony Related to Webcam Incident

During the second day of trial, Agent Segarra described another chat session between Patsychula14 and Secreto that took place on the morning of June 5, 2008. It was during this chat that Secreto sent Patsychula14 an invite to view a webcam video. Agent Segarra testified that after she accepted the invite as Patsychula14, she could observe an adult male masturbating. Agent Segarra also testified that she could observe "a five-star chair and a floor. . . . part of a desk, a desk top drawer, and a file drawer" that were later identified when federal agents executed the search warrant on Vázquez's home. This testimony was proper.

The prosecution then asked Agent Segarra why these observations were important. Over the defense's objections on grounds that the importance of this testimony was the jury's province, Agent Segarra responded:

> It was very important, because it helped us identify that this is where William Vazquez -- this office where William Vazquez utilized [sic] to send the video and other child pornography pictures in the search warrant. . . .
> In the office we noticed there was a [sic] same chair, and we also compared the pictures

> of the search warrant with the video . . . .
> And that also helped us identify William
> Vazquez-Rivera.

The prosecution then showed the video. Agent Segarra testified that in part of the video, it was possible to see an "individual [] wearing red flannel pajamas, which were exactly the same flannel pajamas that William Vazquez-Rivera was wearing the day that we arrived at his residence to conduct the search warrant."

Because defense counsel did not object to this testimony on the Rule 701 and overview grounds it now raises on appeal, we review for plain error. United States v. Capozzi, 486 F.3d 711, 718 (1st Cir. 2007).

We conclude that this testimony was plainly improper. First, as before, Agent Segarra's testimony was not limited to opinion that soundly followed from her perceptions. Second, Agent Segarra's statement also summarized the investigation without indicating that her testimony was based on evidence before the jury. Crucially, because the determination of whether Vázquez was the man in the webcam video could have been properly reached only by considering evidence available to the jury, Agent Segarra's testimony also usurped the jury's role instead of being helpful to it. See 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 701.05 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2011) (testimony, the "sole function" of which is "to answer the same

question that the trier of fact is to consider in its deliberations. . . . [m]ay be excluded as unhelpful").

In its brief, the government highlights the fact that Agent Segarra was part of the group of agents that executed the search warrant on Vázquez's residence and observed Vázquez wearing "the same red flannel pajamas as in the masturbation incident." The government also notes that Agent Segarra was able to observe items and parts of Vázquez's residence that appeared similar to those that could be seen in the video. Based on these observations, the government reasons that Agent Segarra's identification statements were based on her personal knowledge.

Here, the government misses the point. Even if Agent Segarra had some basis for personal observation, her testimony clearly relied heavily on the overall investigation and the conclusions reached by other agents. It was the prosecution's burden to lay a foundation that established the basis of Agent Segarra's knowledge or opinion in connection with all of her testimony. See Fed. R. Evid. 602, 701; see also Rosado-Pérez, 605 F.3d at 55 ("A foundation should be laid establishing the basis of a witness's knowledge, opinion, or expertise."). While the prosecution appears to have laid an acceptable foundation for Agent Segarra to testify about the steps taken in the investigation, the online chats she had with the individual using the screen names IncestoPR and Secreto, and the items, events, and clothing she

observed while she executed the search warrant on Vázquez's home, Agent Segarra's testimony as to Vázquez's identity, based on the investigation as a whole, was clearly improper.

### 4. Testimony Related to Seizure of Desktop Computer

After Agent Segarra described the evidence collected at Vázquez's home, the prosecution inquired about the purpose of seizing Vázquez's desktop computer. Agent Segarra stated that "[t]he purpose was to corroborate all the information that we previously had from all the chats, and all the information we had obtained from William Vazquez-Rivera."

The prosecution then asked Agent Segarra if the seizure of Vázquez's desktop computer achieved the described purpose, to which the defense objected on hearsay grounds. The trial judge overruled the defense's objection, and the prosecution was allowed to restate the question, now asking Agent Segarra whether, in her opinion, the purpose of the seizure had been achieved. Once again, the defense objected, now noting that Agent Segarra's opinion did not constitute admissible evidence. At the court's behest, the prosecution rephrased its question and Agent Segarra testified that the government achieved the seizure's intended purpose, at least in part because forensic analysis of the seized computer yielded two of the child pornography images transmitted during the chat sessions.

-21-

To the extent Agent Segarra testified about the results of the government's forensic analysis on the seized computers, it appears she relied on information provided to her by FBI Agent and computer analyst Hesz Rivera and thus predicated her statements on hearsay. However, because Agent Rivera's later testimony corroborated Agent Segarra's statements regarding forensic analysis results, we conclude that any hearsay problem here was harmless under review for either plain error or abuse of discretion. See United States v. Piper, 298 F.3d 47, 58 (1st Cir. 2002) ("Cumulative evidence is typically regarded as harmless . . . .").

**5. Later Identification Testimony Related to Webcam Video**

When Agent Segarra began to describe the video containing the masturbation incident to the jury, the prosecution asked her: "And throughout your investigation, do you identify who [the male in the video] was?" Agent Segarra answered: "Yes. We identified that person to be William Vazquez-Rivera."

This testimony was admitted in error. Without a doubt, it purports to present Agent Segarra's opinion regarding Vázquez's culpability based on the whole of the government's investigation and, by relying on the plural "we," improperly alludes to unnamed investigators' views without explaining what those were or whether they were based upon the record in evidence or these investigators' perceptions. See García, 413 F.3d at 211.

### 6. **Prosecution's Redirect Examination of Agent Segarra**

Lastly, Vázquez alleges that a substantial portion of Agent Segarra's testimony during redirect examination amounts to plain error. Specifically, Vázquez takes issue with the prosecution's questioning regarding each online chat session mentioned in Agent Segarra's testimony. This back-and-forth between the prosecution and its witness went as follows:

> Q: Now, as of today, after having conducted the investigation, after having received all the information and having executed the search warrant, can you identify the person that you were chatting with on April 16 of 2008?
>
> A: Correct, with all the evidence we have gathered from the investigation, yes.
>
> Q: Who is that person?
>
> A: The person is William Vazquez-Rivera.
>
> Q: And on April 28, 2008.
>
> A: No.
>
> Q: Can you identify the person you were chatting with as of today?
>
> A: Correct. If he is the holder of that IP address for Bienhotpr, yes, we could identify him back then.
>
> Q: And who is that?
>
> A: William Vazquez-Rivera.
>
> Q: And as of today, after gathering all the information and identifying the information, can you identify who you were chatting with on May 20, 2008?
>
> A: Yes.

Q: Who is that person?

A: William Vazquez-Rivera.

Q: And on May 22, 2008?

A: Correct, William Vazquez-Rivera.

Q: And May 27, 2008?

A: Yes, William Vazquez-Rivera.

Q: And May 29, 2008?

A: Yes, William Vazquez-Rivera.

Q: And May 30, 2008?

A: Yes, William Vazquez-Rivera.

Q: And on June 5, 2008?

A: Yes, William Vazquez-Rivera.

Q: And on that specific date, did you see any visual of William Vazquez-Rivera?

A: Yes, I did.

Q: What visual was that?

A: I saw him masturbating via webcam, and we also saw the pajamas we were able to identify the day of the search warrant.

Q: And on July 2nd, 2008, were you able to identify as of today who you were chatting with on that date?

A: Yes, William Vazquez-Rivera.

All told, during this exchange, Agent Segarra mentioned the defendant's name nine times, repeatedly identifying him as the

-24-

individual responsible for the offending conduct -- the primary issue disputed by Vázquez's defense at trial.

This testimony is rife with the Rule 701-related dangers we have already discussed at length above and in other prior cases. Agent Segarra's statements here again run afoul of Rule 701's demand that lay opinion testimony be "helpful to a clear understanding of the witness' testimony or the determination of a fact at issue." Fed. R. Evid. 701(b). We have explained that "[t]he nub of [Rule 701(b)'s] requirement is to exclude testimony where the witness is no better suited than the jury to make the judgment at issue, providing assurance against the admission of opinions which would merely tell the jury what result to reach." Meises, 645 F.3d at 16 (internal citations and quotation marks omitted); see also Lynch v. City of Boston, 180 F.3d 1, 17 (1st Cir. 1999). Moreover, as should be clear by now, Agent Segarra improperly relied on far more than her personal observations or evidence already before the jury.

**C. Whether Improper Testimony Prejudiced Vázquez**

Having concluded that much of the challenged testimony constituted obvious error, we must now assess whether Vázquez can "surmount the high hurdle of plain error review and show that the improper remarks affected the outcome of the trial." United States v. (Feliciano)-Rodríguez, 525 F.3d 85, 96 (1st Cir. 2008). This inquiry is "substantially similar" to the standard we follow in

harmless error analysis, with the added wrinkle that "the petitioner, not the government, 'bears the burden of persuasion with respect to prejudice.'" Ramírez-Burgos v. United States, 313 F.3d 23, 29 (1st Cir. 2002) (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). Surveying the government's case against Vázquez, we must conclude that, in this case, wrongly-admitted testimony disturbed the appellant's substantial rights.

Undercover investigations in which agents posing as minors "visit" a chat room or other online location where suspected child predators convene have become a common tool to detect individuals who would deign to engage in the reprehensible conduct that child pornography laws proscribe. See, e.g., United States v. Sims, 428 F.3d 945, 950 (10th Cir. 2005); United States v. Chriswell, 401 F.3d 459, 460 (6th Cir. 2005); United States v. Cherian, 58 Fed. Appx. 596, *1 (5th Cir. 2003). Because much of the transgressive acts these investigations target are carried out in private while the offender sits at a computer terminal, even when agents are able to zero in on a suspect -- e.g., by matching an internet account on record or an IP address with an account holder's residential or physical address -- it may not always be clear that he or she is actually responsible for the conduct that agents observed on their screens. As the instant case suggests, when the subject of the investigation communicates at all times through an online alias or "screen name" and other persons have

-26-

access to the computer used to communicate with undercover law enforcement agents, it becomes all the more necessary for the investigation to collect evidence, direct or circumstantial, that will link the prohibited conduct to the defendant beyond a jury's reasonable doubt.

Here, the issue of identification was everything at trial. When the prosecution started its case against Vázquez it was beyond cavil that, hiding behind the screen names "Secreto" and "IncestoPR," someone discussed topics of a strong sexual nature with and sent images containing child pornography to Patsychula14, a decoy fourteen-year-old girl. It was similarly clear that during one of those chats, Secreto invited Agent Segarra, posing as Patsychula14, to view a webcam video depicting an adult male masturbating. What the prosecution had to prove to the jury beyond a reasonable doubt, however, was that the evidence the government collected supported its theory that Vázquez was behind this conduct. Correspondingly, defense counsel undertook a strategy designed to cast a shadow of doubt over the prosecution's claim that Vázquez was culpable. Prompted by counsel, Vázquez's wife testified that others -- including, notably, other adult males -- had access to Vázquez's home and the seized computers during the period the chats took place. Pressed on cross-examination, the agent supervising the investigation also acknowledged that the

government did not investigate several IP addresses from which the email account that corresponded with Patsychula14 was accessed.

The jury was free to give these attempts to undermine the prosecution's case as much credit as it desired. Although the case against Vázquez was largely based on circumstantial evidence, the jury was also free to assign the evidence against him as much weight as it considered appropriate. See United States v. Gamache, 156 F.3d 1, 8 (1st Cir. 1998) ("[C]ircumstantial evidence, if it meets all the other criteria of admissibility, is just as appropriate as direct evidence and is entitled to be given whatever weight the jury deems it should be given . . . ."). Our concern, however, is that the prosecution's repeated and extensive use of improper testimony may have influenced the jury at the likely expense of Vázquez's efforts to mount an adequate defense. Because we do not find that the evidence against Vázquez was sufficiently compelling to assuage this concern, we conclude it is highly probable that the errors here affected the jury's verdict and find that they unfairly impaired the integrity of Vázquez's trial.

### III.  Conclusion

For the foregoing reasons, we vacate Vázquez's conviction.

**Vacated**.