# United States Court of Appeals
## For the First Circuit

No. 11-1050

UNITED STATES,

Appellee,

v.

AUGUSTÍN RODRÍGUEZ-ADORNO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Lydia J. Lizarribar-Masini for appellant.
Vernon Benet Miles, Assistant United States Attorney, with
whom Rosa Emilia Rodriguez-Velez, United States Attorney, and
Nelson Pérez-Sosa and Julia M. Meconiates, Assistant United States
Attorneys, were on brief, for appellee.

September 17, 2012

**LIPEZ, Circuit Judge**. Appellant Augustín Rodríguez-Adorno appeals his conviction in the United States District Court for the District of Puerto Rico of conspiracy to commit a carjacking and aiding and abetting an attempted carjacking resulting in a death. He raises three challenges to his conviction: (1) the government presented inappropriate and prejudicial overview testimony from a Federal Bureau of Investigation ("FBI") agent at the outset of its case, (2) the government engaged in improper vouching in its closing argument, and (3) the court erred in denying his Federal Rule of Criminal Procedure 29 motion for a judgment of acquittal. He also claims that the court erred in applying the United States Sentencing Guidelines Manual ("USSG") § 2B3.1(c) "murder cross reference" in determining the guidelines range for his sentence. Finding appellant's arguments meritless, we affirm.

## I.

As we are called upon to assess the sufficiency of the evidence supporting appellant's conviction, we present the facts in the light most favorable to the verdict, while also describing briefly appellant's version of the events. See United States v. Díaz, 670 F.3d 332, 337 (1st Cir. 2012). At the outset, we provide only a summary of the relevant facts, reserving for our analysis a more detailed discussion of the facts relevant to each issue.

On May 12, 2007, appellant and two co-defendants approached a car leaving the parking lot of a Subway restaurant in the Río Piedras district of San Juan, Puerto Rico. The two co-defendants walked behind the car, while appellant, who was following them closely, struck the passenger's window and told the two occupants "[t]his is the car we are going to take." Appellant then tried to open the passenger-side door of the car, but, finding it locked, ran around to the driver's side. The driver's door was unlocked and appellant began to fight with the driver, who was unwilling to give up the car. When the two co-defendants moved to join the fight, the passenger got out of the car to aid the driver. After a brief altercation, the driver yelled to the passenger to get back in the car. Immediately after the victims re-entered the car, one of appellant's two co-defendants shouted to the other to shoot the driver "because he was a tough one." The other co-defendant then pulled out a pistol and fired five or six times toward the driver of the car, killing him.

Appellant and his two co-defendants were indicted on four counts: (1) conspiring to commit a carjacking with intent to cause death or serious bodily harm, in violation of 18 U.S.C. §§ 371, 2119; (2) aiding and abetting in a carjacking that resulted in a death, in violation of 18 U.S.C. § 2119(3); (3) aiding and abetting in the use, carriage, and discharge of a firearm in furtherance of, during, and in relation to the commission of a crime of violence,

in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and (4) aiding and abetting each other in causing the death of another person through the use of a firearm, in violation of 18 U.S.C. § 924(j).

Appellant was tried alone, after one co-defendant agreed to plead guilty and charges against the other were dropped. At trial, the government presented extensive evidence against appellant, including testimony from the passenger of the car and two Subway employees who witnessed the event and identified appellant. The government also introduced surveillance video footage from a local business showing appellant and his co-defendants walking toward the scene of the shooting shortly before the incident, as well as from a surveillance camera at the Subway restaurant showing a portion of the fight. Additionally, the parties stipulated that DNA samples taken from a hat and pieces of a gold chain found at the scene were consistent with DNA samples provided by appellant.

Appellant testified at trial. Although he did not dispute the fact of the altercation, he provided a different version of events. According to appellant, the incident began when the car driven by the victim brushed his knee as he and his friends were walking along the side of the road. He testified that he hit the window of the car in anger after the car hit him, and that the driver exited the car in a belligerent fashion. Appellant stated that the driver punched one of his co-defendants and then attacked

-4-

him, forcing him to the ground.  He testified that as he was getting up he heard gun shots, but had previously had no idea that one of his co-defendants was armed.

The jury found appellant guilty of counts one and two of the indictment -- conspiring to commit a carjacking with intent to cause death or serious bodily harm, and aiding and abetting in a carjacking that resulted in a death.  Because the victim was killed in the course of the attempted robbery, the court applied a "murder cross reference," USSG § 2B3.1(c), in determining the guidelines range applicable to appellant.  This application raised the base level for the offense conduct to 43, and called for a sentence of life in prison.  However, considering appellant's young age (26 years), lack of any criminal history, and the fact that he was neither the shooter nor the one who urged the shooter to kill the victim, the court found that a life sentence "is not conscionable in this case."  Instead, it imposed a 180-month sentence to be followed by three years' supervised release.  This appeal followed.

## II.

### A.  Overview Testimony

As we have now said many times, overview testimony is problematic when it "consists of declarations by a witness -- commonly a law enforcement officer involved in the investigation at issue -- presented early during trial to describe the government's general theory of the case." United States v. Vázquez-Rivera, 665

F.3d 351, 356 (1st Cir. 2011). Such testimony commonly "relie[s] heavily on information told to [the witness] by others -- i.e., on inadmissible hearsay -- rather than on . . . personal knowledge," United States v. Meises, 645 F.3d 5, 14 (1st Cir. 2011), and often "preview[s] the testimony of other witnesses," id. at 14 n.13. In addition to the hearsay problem, overview testimony of this sort is "especially problematic because juries may place greater weight on evidence perceived to have the imprimatur of the government." United States v. Flores-de-Jesús, 569 F.3d 8, 17 (1st Cir. 2009) (quoting United States v. Casas, 356 F.3d 104, 120 (1st Cir. 2004)) (internal quotation marks omitted).

The prejudicial effect of this kind of testimony is heightened when an overview witness is permitted to testify to the ultimate issue in a criminal trial -- the defendant's culpability. See Meises, 645 F.3d at 18 (noting that it is "patently unfair" for a case agent to testify to defendant's culpability). Furthermore, testimony regarding culpability is a form of lay opinion that will rarely, if ever, meet the requirements of Federal Rule of Evidence 701. See Fed. R. Evid. 701(b); Vázquez-Rivera, 665 F.3d at 358.

However, testimony from a law enforcement officer who "played a hands-on role in nearly every aspect of the investigation" is usually permissible where it "consist[s] of describing the sequence of events that he had seen and heard." Meises, 645 F.3d at 15. As we have explained, "[t]here may be

value in having a case agent describe the course of his investigation in order to set the stage for the testimony to come about the nature of the conspiracy and the defendants involved." Flores-de-Jesús, 569 F.3d at 19. But this testimony must be limited to a description of the investigation, and may not shade into a statement of the government's theory of the case or conclusory statements about the defendant's culpability. See id.

## B. Agent Gilbert's Testimony

We review preserved evidentiary objections, including those challenging overview testimony, for abuse of discretion. See United States v. Rodriguez, 525 F.3d 85, 95 (1st Cir. 2008). Of course, even if we find error, we will not overturn a conviction if we deem it harmless, meaning that "it is highly probable that the error did not influence the verdict." Id. (quoting United States v. Flemmi, 402 F.3d 79, 95 (1st Cir. 2005)) (internal quotation marks omitted). Where an objection was not raised before the district court, we review admission of the challenged testimony for plain error. Id. This requires us to determine whether "(1) an error occurred (2) which was clear or obvious and which not only (3) affected [] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Vázquez-Rivera, 665 F.3d at 357 (quoting Flemmi, 402 F.3d at 16) (alteration in original). We have noted that "[t]his inquiry is substantially similar to the standard we follow in

harmless error analysis, with the added wrinkle that the petitioner, not the government, bears the burden of persuasion with respect to prejudice." Id. at 363 (quoting Ramírez-Burgos v. United States, 313 F.3d 23, 29 (1st Cir. 2002)) (internal quotation marks omitted).

The government's first witness at trial was FBI agent Richard Gilbert, who was the agent in charge of the investigation. Among other things, his testimony described the course of the investigation. Appellant argues that portions of Gilbert's testimony were impermissible overview testimony. In particular, he points to Gilbert's characterization of the events of May 12, 2007, as a "carjacking" and "murder." He also challenges the admissibility of Gilbert's testimony identifying individuals appearing on the surveillance videos that were shown to the jury, as well as Gilbert's testimony about who was involved in the altercation that morning. Finally, appellant notes that Gilbert also summarized the statements of others by testifying that seven or eight witnesses identified appellant as being involved in the altercation. In sum, appellant argues that much of Gilbert's testimony was inadmissible hearsay and that Gilbert offered prejudicial testimony concerning appellant's culpability that usurped the jury's fact-finding function.

### 1.  Preserved Claim of Error

Stating that Gilbert's characterization of the event as a "carjacking" was based on hearsay, the government acknowledges that it was admitted in error.  This acknowledgment was apt, not only because the statement may have been based on hearsay (the government does not elaborate on its concession), but also because it was inadmissible lay opinion testimony as to the ultimate issue of appellant's culpability. See Fed. R. Evid. 701(b) (stating that opinion testimony of lay witness must be "helpful to clearly understanding the witness's testimony or to determining a fact in issue"); Vázquez-Rivera, 665 F.3d at 358 ("[L]ay opinions going to the ultimate issue will rarely meet th[e] requirement [of Rule 701(b)], 'since the jury's opinion is as good as the witness's.'" (quoting United States v. Sanabria, 645 F.3d 505, 516 (1st Cir. 2011))).  Appellant preserved his objection to this testimony.  The government argues that admission of this testimony was harmless.

After appellant's objection, the government corrected itself and referred to the incident as an "alleged carjacking."  The incident was referred to as a "carjacking" only three other times during Gilbert's examination, once by the government, properly labeling it "alleged," but twice by Gilbert, who omitted the qualifier.  However, these two statements were passing references on the first day of trial and the government did not refer to Gilbert's characterization of the event as a "carjacking"

-9-

in its closing argument. In the context of all of the evidence offered at trial -- including testimony from the passenger in the car and multiple other witnesses -- these comments were insignificant. Accordingly, we may safely conclude that "it is highly probable that the error did not influence the verdict," and was thus harmless. Rodriguez, 525 F.3d at 95.

## 2. Unpreserved Claims of Error

Appellant challenges two additional portions of Gilbert's testimony. First, he takes issue with Gilbert's testimony identifying the individuals captured on the two surveillance tapes shown to the jury, as well as testimony identifying the individuals involved in the altercation. Second, he challenges Gilbert's testimony that seven or eight witnesses identified appellant as being involved in the incident. Since he did not raise objections to any of this testimony at trial, we review only for plain error and appellant bears the burden of establishing prejudice. See Rodriguez, 525 F.3d at 95.

Gilbert's testimony that seven or eight witnesses identified appellant as being involved in the incident, which was offered to prove that involvement, was based on inadmissible hearsay. See Fed. R. Evid. 801. This is precisely the kind of inadmissible hearsay testimony, often present in overview testimony, that we have repeatedly condemned. See Flores-de-Jesús, 569 F.3d at 19-20. Understandably, the government makes no effort

-10-

to defend this statement, conceding that it was admitted erroneously.

Gilbert's testimony identifying the individuals captured on the two surveillance tapes shown to the jury, as well as testimony identifying the individuals involved in the altercation on the basis of those tapes, present a closer question. Testimony by a law enforcement officer identifying a defendant as the person depicted in a video or photograph may be admissible where "the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also possess, and when the [images] are not either so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification." United States v. Jackman, 48 F.3d 1, 4-5 (1st Cir. 1995). However, where the witness is in no better position than the jury to make an identification, such testimony does not meet the requirements of Federal Rule of Evidence 701 and is inadmissible. See United States v. Jadlowe, 628 F.3d 1, 24 (1st Cir. 2010) (finding testimony of police officers inadmissible where jurors are equally capable of identifying defendant as person seen in video surveillance). Here, it is unclear whether Gilbert had any special familiarity with the individuals involved that would make him better suited to make the identifications than the jurors. Accordingly, we will assume, without deciding, that his testimony was admitted in error.

However, appellant cannot demonstrate the prejudice required by plain error review. Gilbert's identification of appellant and his co-defendants from the tapes was clearly innocuous in light of the fact that appellant acknowledged that he was present and took part in the fight. For the same reason, Gilbert's testimony that seven or eight witnesses identified appellant as being involved in the incident cannot have been prejudicial. Both forms of testimony simply assert a fact that appellant acknowledged was true. Thus, appellant does not come close to "surmount[ing] the high hurdle of plain error review [by] show[ing] that the improper remarks affected the outcome of the trial." Vázquez-Rivera, 665 F.3d at 363 (internal quotation marks omitted).

## III.

Appellant claims that the government engaged in improper vouching in its closing argument. In particular, appellant sees improper vouching in: (1) the government's statement, referring to the car passenger's testimony, that "[n]o one has ever said that [the passenger] testified other than honestly"; (2) the government's rhetorical questions, "Was [the passenger] credible? Was he honest? Of course, he was"; (3) the statement that verification of one aspect of the passenger's testimony "reflect[s] upon [his] ability to testify truthfully and honestly"; and (4) the statement that, "[t]he evidence shows that the more credible

-12-

witnesses here are those who have no interest in this case." The first of these statements was made in the government's initial closing argument and the final three in its rebuttal to appellant's argument. Since appellant did not object to these statements at trial, we review them for plain error. See United States v. Figueroa-Encarnacion, 343 F.3d 23, 27 (1st Cir. 2003).

Improper vouching occurs when a prosecutor or government witness "impart[s] her personal belief in a witness's veracity or impl[ies] that the jury should credit the prosecution's evidence simply because the government can be trusted." United States v. Valdivia, 680 F.3d 33, 49 (1st Cir. 2012) (quoting United States v. Pérez-Ruiz, 353 F.3d 1, 9 (1st Cir. 2003)) (internal quotation marks omitted). The first, third and fourth statements identified above provide fair commentary on the evidence. The first is simply an argument, somewhat inartfully formed, that the passenger was never effectively impeached. The third statement points out that there was corroboration for a portion of the passenger's testimony, justifying the inference that he has generally testified truthfully. The fourth statement is a suggestion that witnesses who have no stake in the outcome of the case can be viewed by jurors as more credible. However, the second statement is unmistakably the personal opinion of the prosecutor as to the honesty of a witness and constitutes improper vouching.

We have explained that vouching is more likely to be harmful "where the prosecutor flaunts the government's skills and purity of motive or where the context or the prosecutor's words imply private knowledge of the defendant's guilt that unfortunately cannot be shared with the jury." United States v. Gomes, 642 F.3d 43, 47 (1st Cir. 2011). Neither of these problematic behaviors occurred here. Even though the prosecutor provided his own opinion of the passenger's credibility, the jury had ample opportunity to draw its own conclusions about the witness's veracity, given that it saw and heard the passenger testify for several hours. The prosecutor's comment, prefaced by the introductory phrase "of course," implied no special knowledge or purity of motive, and cannot have made a significant difference in the jury's perception of this testimony. See id. Because appellant has failed to show the requisite prejudice, this error does not justify a new trial under the plain error rubric. See Figueroa-Encarnacion, 343 F.3d at 28-29.

**IV.**

Federal Rule of Criminal Procedure 29 entitles a defendant to a judgment of acquittal if, at the close of all evidence or the conclusion of the government's case, "the evidence is insufficient to sustain a conviction." We review a district court's denial of a Rule 29 motion de novo, "taking the evidence in the light most favorable to the government and making all

reasonable inferences in its favor." United States v. Giambro, 544 F.3d 26, 29 (1st Cir. 2008). Such an analysis requires us to "assess whether a reasonable factfinder could have concluded that the defendant was guilty beyond a reasonable doubt." United States v. Fernández-Hernández, 652 F.3d 56, 67 (1st Cir. 2011). Thus, we ask only whether "the guilty verdict finds support in a plausible rendition of the record." United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006) (quoting United States v. Cruzado-Laureano, 404 F.3d 470, 480 (1st Cir. 2005)) (internal quotation marks omitted).

Although his briefing is not clear, appellant appears to challenge his convictions of both conspiracy and aiding and abetting a carjacking resulting in death. He argues that there was insufficient evidence to allow the jury to find that he possessed the requisite intent to commit a carjacking. This challenge is meritless.

"To support a conviction under a conspiracy charge, the government must show that a defendant had both the intent to agree to commit a crime, and the intent that the crime be completed." United States v. Castro-Davis, 612 F.3d 53, 60 (1st Cir. 2010). We have noted that "[t]he prosecution need only show knowledge of the basic agreement, with an intent to commit the underlying substantive offense. The requisite knowledge and intent can be proven through circumstantial evidence, including inferences from acts committed by the defendant that furthered the conspiracy's

purposes." Id. (quoting United States v. García-Pastrana, 584 F.3d 351, 377 (1st Cir. 2009)) (internal quotation marks omitted).

In turn,

> [t]he elements of a carjacking resulting in death are (1) taking or attempted taking from the person or presence of another; (2) a motor vehicle transported, shipped, or received in interstate or foreign commerce; (3) through the use of force, violence, or by intimidation; (4) with the intent to cause death or serious bodily harm; (5) that results in death.

Id. at 61. In Holloway v. United States, 526 U.S. 1 (1999), the Supreme Court clarified the intent element of the statute, explaining that

> [t]he intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car).

Id. at 12. Finally, to establish aiding and abetting liability, the government has to prove that: 1) the substantive offense was actually committed, 2) "th[e] defendant assisted in the commission of that crime or caused it to be committed," and 3) "the defendant intended to assist in the commission of that crime or to cause it to be committed." United States v. Gonzalez, 570 F.3d 16, 27-29 (1st Cir. 2009) (quoting jury instructions).

In making his sufficiency argument, appellant focuses on the intent element of the carjacking statute. However, there was

-16-

ample evidence indicating that appellant had the requisite intent to "seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." Holloway, 526 U.S. at 12.[1]  Most importantly, the passenger in the car offered extensive testimony about the events of May 12, 2007, including testimony that appellant instigated the entire chain of events by striking his window and telling him and the driver, "This is the car we are going to take."  This testimony was powerful evidence that appellant and his co-defendants were acting in concert and that they approached the car with the intent to commit a carjacking.  In addition to this testimony, there was more evidence in the form of eyewitness testimony describing the altercation between appellant and his co-defendants and the victims, as well as physical evidence linking appellant to the scene.

Appellant argues that there was no evidence that he was aware that one of his co-defendants had a gun and, thus, that there was insufficient evidence to permit the jury to find that he had an

[1] Appellant's sufficiency argument relies in large measure on his overview testimony and vouching arguments. However, the latter is irrelevant to the sufficiency analysis. It is a trial fairness issue and we have dealt with it as such. Furthermore, we do not include the contested overview testimony in our sufficiency analysis because we have either concluded that it was admitted in error or assumed so. Thus, it would be inappropriate to rely on it in assessing the sufficiency of the evidence supporting appellant's conviction. Instead we focus on the other ample evidence indicating the appellant's intent.

intent to kill or seriously harm the victim in carrying out the carjacking. However, as the government points out, the evidence showed that appellant and his co-defendants used violence from the very beginning of the incident, suggesting a willingness to harm the victim. In addition to the testimony that appellant struck a window of the car and announced his intent to take the vehicle, there was testimony from several witnesses that appellant and his co-defendants began to fight with the victims when they refused to acquiesce in the carjacking. Furthermore, there was extensive evidence that appellant and his co-defendants acted in concert, rendering it unlikely that appellant was unaware that his co-defendant was armed. Finally, although the fact of the killing does not alone satisfy the intent element of § 2119, "[c]ommon sense . . . dictates that the final act, at the very least, evidences the intent." Castro-Davis, 612 F.3d at 63 n.13. In aggregate, this evidence is sufficient to permit the jury to conclude that appellant "possessed the intent to seriously harm or kill the driver if necessary to steal the car." Holloway, 526 U.S. at 12.

Accordingly, "taking the evidence in the light most favorable to the government and making all reasonable inferences in its favor," Giambro, 544 F.3d at 29, there is no question that the government presented sufficient evidence to support appellant's convictions.

**V.**

USSG § 2B3.1 establishes sentencing guidelines for the crime of robbery, and provision (c)(1) of that section instructs that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 . . . , apply § 2A1.1," which calls for a base offense level of 43 and a sentence of life. In turn, 18 U.S.C. § 1111 defines murder as "the unlawful killing of a human being with malice aforethought."  As with all appeals concerning the interpretation and application of the sentencing guidelines, a court's decision to apply § 2B3.1(c)(1) is reviewed de novo and its factual findings for clear error. United States v. Aguasvivas-Castillo, 668 F.3d 7, 13 (1st Cir. 2012).

Appellant raises several challenges to application of the murder cross reference, USSG § 2B3.1(c)(1).  As best we can make out, he argues first that there was insufficient evidence to establish the intent required to convict him of a carjacking under 18 U.S.C. § 2119.  This argument is simply a restatement of his argument in support of his Rule 29 motion, and it fails for the reasons described above.  Appellant also argues that because he was acquitted of counts three (aiding and abetting in the use, carriage, and discharge of a firearm in furtherance of, during, and in relation to the commission of a crime of violence) and four (aiding and abetting the killing of another person through the use

-19-

of a firearm), it was error for the court to apply the murder cross reference.

Without suggesting that there is any validity to appellant's argument about the relationship between the application of the murder cross reference and the acquittal on counts three and four, we conclude that, on the facts of this case, the convictions on counts one and two justify the application of the murder cross reference. As required by the guidelines, the circumstances of the victim's killing would constitute murder under 18 U.S.C. § 1111. Here, the victim was shot and killed by appellant's co-conspirator in the course of the carjacking. That is enough to apply the murder cross reference to appellant. See United States v. García-Ortiz, 528 F.3d 74, 81-82 (1st Cir. 2008) (noting that a "killing [during a] robbery [is] first-degree murder by those who perpetrated the robbery, regardless of who pulled the trigger or any individual intent" (internal quotation mark omitted)); United States v. Shea, 211 F.3d 658, 674 (1st Cir. 2000) (stating same and finding application of USSG § 2B3.1(c)(1) appropriate).

**VI.**

For the foregoing reasons, the judgment of the district court is affirmed.

So ordered.