# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LAVERE DOUGLAS-LE BRYANT,

Defendant-Appellant.

UNPUBLISHED
August 23, 2016

No. 325569
Wayne Circuit Court
LC No. 13-009087-FC

Before: OWENS, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of two counts of first-degree premeditated murder, MCL 750.316(1)(a), two counts of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, unlawful imprisonment, MCL 750.349b, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to two terms of life imprisonment without parole for the murder convictions, and concurrent prison terms of 37-1/2 to 60 years for the armed robbery conviction, 14 years and 3 months to 30 years for the unlawful imprisonment conviction, and 4 years and 9 months to 10 years for the felon-in-possession conviction, all of which were to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. For the reasons stated below, we vacate defendant's convictions and sentences and remand for a new trial.

Defendant's convictions arise from the July 2013 robbery of a Family Dollar store in Dearborn, Michigan, and the shooting deaths of two store employees, Brenna Machus and Joseph Orlando. The employees were responsible for closing the store on the evening of July 15. The next morning, the store manager noticed that each employee's vehicle was still in the store parking lot. She contacted the police, who discovered Orlando's body in the store bathroom; he had been shot in the head in apparent execution style. There was no sign of Machus inside the store. Her body was discovered two days later along the Southfield Freeway service drive; she too had been shot in the head.

The police determined that both victims were shot with the same gun. Defendant was a former store employee whose employment had been terminated two months earlier, after coworkers complained about him sexually harassing workers and customers. The prosecution's theory at trial was that defendant committed the robbery, shot Orlando inside the store, and then

abducted and sexually assaulted Machus before shooting her. The defense argued that the prosecution's theory was not consistent with the evidence and that there were innocent explanations for evidence that pointed toward defendant. Defendant testified at trial and denied committing the crime.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to support his convictions. An appellate court reviews a challenge to the sufficiency of the evidence de novo, by reviewing the evidence in a light most favorable to the prosecution to determine whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

On appeal, defendant does not dispute that the evidence was sufficient to show that the charged crimes were committed, but argues that it was insufficient to identify him as the person responsible for the crimes. Identity is an essential element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve the issue anew. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013); *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

In this case, defendant was linked to the charged crimes by identification testimony, physical evidence, and circumstantial evidence. A store surveillance video recording captured images of the suspect on the night of the crime, including leaving the store with Machus. At least eight witnesses who worked with and were familiar with defendant identified the suspect in the video recording as defendant. The witnesses explained that they recognized the suspect as defendant by his build, stature, gait, mannerisms, and clothing. The credibility of this identification testimony was for the jury to resolve. *Dunigan*, 299 Mich App at 582.

In addition to this identification testimony, physical evidence also linked defendant to the crimes. A towel found in a shopping cart at the store contained DNA that matched defendant's DNA profile, and the probability of a match was one in 1.75 sextillion. Forensic analysis revealed that fibers found in defendant's car were similar to the fibers from Machus's pants. In addition, a stray fiber found on the bottom of Machus's shoes was similar to the carpet fiber collected from defendant's vehicle, and a fiber on Machus's clothing was similar to a fiber found on the headrest of defendant's vehicle.

Circumstantial evidence also pointed toward defendant's identity as the perpetrator. Less than $1,000 was missing from the store's safe, and the missing money consisted mostly of smaller bills. When the police arrested defendant three days after the offense, they recovered $436 from defendant, which included 56 $1 bills and 16 $5 bills. This evidence supported an inference that the money recovered from defendant was money taken during the robbery.

Shortly after the crime, defendant was observed dumping items in distant trash receptacles, washing the outside of his vehicle, purchasing cleaning supplies and trash bags, and inquiring about having the interior of his vehicle detailed professionally even after defendant tried to clean it himself. This evidence supports an inference that defendant was attempting to dispose of or destroy evidence that might link him to the crime. The circumstances involving defendant's termination of employment with Family Dollar also supported the existence of a motive to commit the crime.

Viewed in a light most favorable to the prosecution, the evidence was sufficient to allow the jury to find beyond a reasonable doubt that defendant was the person who committed the charged crimes.

## II. OTHER ACTS EVIDENCE

Defendant next argues that the trial court erred by allowing the jury to hear testimony about his sexual harassment of coworkers and customers when he was employed by Family Dollar, and by permitting the jury to hear other prejudicial evidence of his possession of pornography, prior imprisonment, and arrest. Defendant argues that this evidence was inadmissible under MRE 404(b)(1). Defendant opposed the prosecution's motion to admit the evidence therefore these issues are preserved.

We review the trial court's decision to admit evidence for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.*

MRE 404(b)(1) prohibits evidence of a defendant's other bad acts to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for a non-character purpose when that evidence is relevant to a material issue at trial and the probative value of the evidence is not substantially outweighed by its prejudicial effect. The logic behind the rule is that a jury must convict a defendant on the facts of the crime charged, not because the defendant is a bad person. *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b)(1) if the evidence is (1) offered for a proper purpose, i.e., not to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The trial court, upon request, may provide the jury with a limiting instruction for any evidence admitted under MRE 404(b)(1). *Id.* at 75. "At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002).

The prosecution has the initial burden of establishing the relevancy of the evidence to a permissible purpose under MRE 404(b)(1). *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Id.*, quoting *Crawford*, 458 Mich at 387; MRE 401. Under MRE 403, relevant evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice. *People v Sabin (After Remand)*, 463 Mich 43, 57-58; 614 NW2d 888 (2000). Unfair prejudice does not mean any prejudice, but refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (quotation omitted).

The prosecution moved the trial court to admit eight prior bad acts of defendant under MRE 404(b). The court ruled that only five acts were admissible. Those five were a 1999 criminal sexual conduct second degree conviction, a 2001 conviction for assault with intent to do great bodily harm involving a prostitute, a 2013 arrest for violation of the Sex Offender Registration Act (SORA), MCL 28.721 *et seq.*, incidences of sexual harassment of prior Family Dollar coworkers, and sexual harassment of a 7-Eleven store employee. The prosecution's theory at trial was that defendant wanted to seek revenge against his former coworkers for reporting his sexual harassment. The prosecutor also argued that defendant's history of sexual harassment of female coworkers and customers was relevant to explain why he shot Orlando inside the store, but took Machus away from the store. Defendant argued that the prior bad acts did not show intent to commit murder, were dissimilar to the charged acts, not relevant to motive or intent, and were substantially more prejudicial than probative.

The trial court allowed the testimony of sexual harassment and evidence of prior convictions for their relevancy to the issues of motive and identity, and to further show that Machus was possibly sexually assaulted. The jury heard 12 witnesses testify to being sexually harassed by defendant. Their testimony described behavior ranging from flirtatious conduct or comments, to sexually suggestive comments, to invasions of personal space and uninvited physical contact. The jury also heard Trooper Todd Johnston testify that he arrested defendant on July 19, 2013, because defendant was a convicted sex offender who was required to register with police and failed to do so since his release from prison. The trial court allowed Trooper Johnston's testimony to show defendant's desire to avoid detection by the police, which was relevant to flight or consciousness of guilt. The prosecution later argued defendant's "prior history of sexual assault" in closing to support the theory that Machus was raped.

The prosecution also sought to admit the same testimony and prior convictions to show defendant's motive to kidnap Machus so that he could sexually assault her, and to show that defendant had the prerequisite intent to premeditate and deliberate to kill Orlando in order to effectuate his plan for Machus. The prosecution argued that the prior bad acts "would provide a standard by which to measure defendant's intent" and "understand the issues in their true context." We find this entire line of reasoning to be "a poorly disguised propensity argument, which is precisely what Rule 404(b) expressly forbids." *Crawford*, 458 Mich at 433 n 14. Evidence that defendant was a convicted sex offender who sexually harassed multiple Family Dollar employees was not probative of anything other than defendant's bad character and criminal propensity to commit a sex crime in general. More perplexing is why this evidence would be relevant when defendant was not charged with a sexual assault crime. Motive was a key issue in this case and we agree that defendant's recent termination from employment was motive to return to the store and exact vengeance, i.e. commit the robbery. The basis of the termination was irrelevant to motive. The other key issue in this case was identity. While the testimony of several persons familiar with defendant who recognized him in surveillance videos was relevant to the issue of identity, testimony that defendant sexually harassed multiple female

-4-

coworkers was not. At best, the proffered testimony related to the uncharged offense of sexual assault against Machus. It is notable that the prosecution did not offer evidence that defendant's underlying sexual assault conviction, which gave rise to the SORA conviction, had similar characteristics to the uncharged assault against Machus. Thus, in a case of murder and robbery, the probative effect of proofs that tended to support the occurrence of a sexual assault against Machus was substantially outweighed by their prejudicial effect.

The prosecution further sought the admission of evidence of pornographic videos found on defendant's cellular phone to show defendant's intent to get revenge and commit a sexual assault. The themes of the videos involved intruders entering a store or restaurant and sexually assaulting a female employee. The movies were legal adult pornography and therefore, not evidence of "other acts" governed by MRE 404(b). They did not establish intent. Rather than by the pornography, intent was shown by the testimony regarding the similarity between the denominations stolen from the store and those found on defendant because it tended to prove the intent to permanently deprive the owner of property. Pornography of adults engaged in roleplaying does not. In addition, as we have noted before, any evidence tending to prove a sexual assault is irrelevant in this case when there was no physical evidence of a sexual assault, no history of sexual harassment by defendant toward Machus, and defendant is not charged with sexual assault.

This case is a clear example of evidence admitted in violation of MRE 403. The combination of sexual harassment testimony with defendant's prior convictions and arrest to prove a sexual assault that was not determinative to the charges and of which there was no physical evidence was highly prejudicial and confused the relevant and material issues of the case. *VanderVliet*, 444 Mich at 74-75; *People v Catanzarite*, 211 Mich App 573, 578-579; 536 NW2d 570 (1995). Testimony regarding defendant's arrest for failing to register under SORA was also improper where it was introduced to show additional criminal wrongdoing and in connection with defendant's criminal propensity to commit sexual assault. The evidence was highly distracting and did no more than to inject considerations that were extraneous to the merits of the case. Therefore, we cannot say that multiple days of inadmissible testimony from 12 witnesses, evidence of prior convictions involving assault, the injection of pornography and defendant's sex offender status, and argument accusing defendant of rape, was harmless error. The trial court abused its discretion in allowing the admission of this evidence. The evidence likely had a significant effect on the trier of fact and was used as a basis to convict defendant. It was overwhelming and worked to deprive defendant of a fair trial.

## III. LAY OPINION TESTIMONY

Defendant next challenges testimony offered by Sergeant Thomas Lance, Corporal Benjamin Harless, and Detective James Isaacs. Because defendant did not object to the challenged testimony, this issue is reviewed for plain error affecting defendant's substantial rights. *Carines,* 460 Mich at 763.

All three witnesses testified regarding their comparison of known videos or photographs of defendant to the suspect depicted in the surveillance recording of the crime scene. Defendant argues that the witnesses were improperly allowed to offer their opinion that the suspect depicted

in the store surveillance video was defendant, and that this testimony invaded the province of the jury. We agree.

MRE 701 permits lay opinion testimony that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." The rule permits testimony that is based on common sense and does not involve highly specialized knowledge. *People v McLaughlin,* 258 Mich App 635, 658; 672 NW2d 860 (2003).

In *People v Fomby,* 300 Mich App 46; 831 NW2d 887 (2013), a police officer identified individuals depicted in still photographs taken from a surveillance video recording as the same individuals in the actual video, but did not testify that any of the individuals depicted in either the still photographs or the video was the defendant. *Id.* at 49. This Court held that the testimony "was properly admitted as lay opinion testimony under MRE 701." *Id.* at 50. This Court reasoned that "it can be inferred from [the officer's] testimony that he viewed the video and the still photos several times in order to draw his conclusions and opinions about the identity of the individuals in the surveillance video and still photos as compared to other individuals depicted in the same evidence." *Id.* at 51. This Court further stated that "it can similarly be reasonably inferred that [the officer's] testimony helped the jury to correctly and efficiently determine whether the two individuals seen earlier in the footage were the same individuals who were involved in the murder later depicted in the video." *Id.* at 52. This Court recognized that when a witness is in no better position than the jury to make an identification from a video or photograph, opinion testimony identifying a person in a video or photograph as the defendant is generally inadmissible as infringing on the jury's role in deciding the defendant's guilt. *Id.* at 52, citing *United States v LaPierre,* 998 F2d 1460, 1465 (CA 9, 1993), and *United States v Rodriguez-Adorno,* 695 F3d 32, 40 (CA 1, 2012). This Court concluded, however, that the officer's testimony was not inadmissible because the officer only linked individuals depicted in the video and still photographs as the same person, and the officer did not identify the defendant as the person in the video or still images. *Id.* at 53.

In *People v Perkins*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket Nos. 323454, 323876, 325741), superseded in part on other grounds *People v Hyatt,* ___ Mich App ___; ___ NW2d ___ (2016), the Court determined that the trial court abused its discretion in allowing the lay opinion testimony of an officer that identified one of the defendants in video footage and still frames taken from the stairwell in an apartment where a murder occurred. *Id.*; Slip op, p 11. In *Perkins*, the identification testimony was elicited on direct examination of the investigating officer during review of the video exhibits. *Id.* The prosecution asked the officer if he could tell the jury who was coming down the stairwell of the apartment building. *Id.* Defense counsel objected, but before the court could rule, the prosecution asked again, "Who is that?" to which the officer responded with the name of one of the defendants. *Id.* Although the court in *Perkins* found the identification testimony to constitute error, it did not reverse on the issue where there was other overwhelming admissible evidence of that defendant's guilt. *Id.* at 12.

The facts in this case are closer to those in *Perkins* than in *Fomby*. They are unlike *Fomby* in that defendant here was identified in a video or photograph and then compared to the murder suspect whereas in *Fomby* the comparison was between unknown individuals in one surveillance video to unknown individuals in another surveillance video. Lance testified that he

obtained five past recordings of "a person who appear[ed] to be [defendant]" entering the Family Dollar store in 2013, on April 3, 15 and 17, May 28, and July 14. Lance was asked to identify for the jury that defendant waived hello with his right hand when entering the store and on another occasion, that defendant smiled. Lance also testified that the suspect in the store video on the date of the offense wore a dark jacket with a hood. Harless testified regarding surveillance video that he obtained from surrounding businesses. Harless knew from other officers that conducted surveillance of defendant that defendant went to the Holiday Grill on July 18, 2013. Harless testified that when defendant exited the Holiday Grill he used his arm to push open the door. Harless testified that the suspect in the crime scene video used his arm to push open the door to exit in the same way. Isaacs testified that he was responsible for reviewing the material on defendant's cell phones and Mac Book. Isaacs testified that he found a picture of defendant wearing a jacket on the Mac Book. Isaacs was asked to compare that jacket to the one worn by the suspect in the Family Dollar surveillance video. Isaacs testified that he believed the jackets were the same. The court interrupted to instruct the jury that Isaacs' testimony was merely opinion and was to be taken just as any other witness' testimony. Isaacs continued to testify about how the jacket defendant wore had the same zipper and pocket as the one in the surveillance video and identified when defendant had the hood of the jacket up and down.

In each instance, the challenged testimony resembled the type of testimony in *Perkins* where the officer identified the suspect in the video and still frames as defendant. Here the officers identified the suspect in the surveillance video as the defendant from other known videos and a photo of defendant based on defendant and the suspect opening the door the same way and wearing the same jacket. Their testimonies invaded the province of the jury. "[T]he issue of whether the defendant in the courtroom was the person pictured in a surveillance photo [is] a determination properly left to the jury." *Fomby*, 300 Mich App at 52. "[W]here a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980). The jury was able to compare the type of clothing worn by defendant and the suspect and observe the mannerisms of each. There was no testimony that the surveillance video of the crime scene was of poor quality, distorted or contained a multitude of other people such that clarification or explanation by the officers was necessary. *Perkins*, ___ Mich App at ___; slip op 12. Even the trial court at one point commented, "Oh, no, it's clear." We agree with defendant that each officer's testimony regarding the surveillance video was similarly unhelpful to the jury. MRE 701 requires that lay opinion testimony be helpful "to a clear understanding of the witness' testimony or the determination of a fact in issue" in order to be admissible. The testimony from Lance, Harless and Isaacs did not meet this standard. We acknowledge that identity was a fact in issue here, however multiple other witnesses who were familiar with defendant were available to clearly identify him as the suspect in the surveillance videos.[1] Thus, while it was error for the court to

---

[1] Defendant was identified in the surveillance videos by surrounding business employees Sally Jenkins and Kurt Kruger, as well as by numerous Family Dollar employees: Nicole Rick-Coleman, Dionna Wilson, Tannisha Fitzpatrick, Cristel Johnson, and Jasmin Gregory, all of whom worked with defendant.

allow the identification testimony from these officers, defendant's substantial rights were not affected where defendant was otherwise identified by numerous other witnesses.

## IV. PROSECUTORIAL MISCONDUCT

Defendant lastly argues that the prosecutor engaged in misconduct by repeatedly attacking his credibility and referring to him as a "liar" in her closing argument. Defendant did not object to the challenged arguments at trial. Therefore, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Abraham,* 256 Mich App 265, 274; 662 NW2d 836 (2003). This Court will not reverse if the prejudicial effect of any improper conduct could have been cured by a timely instruction from the trial court. *People v Joezell Williams II,* 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). A prosecutor is afforded great latitude during closing argument. The prosecutor is permitted to argue the evidence and reasonable inferences arising from the evidence in support of her theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Although the prosecutor must refrain from making prejudicial remarks, *id.* at 282-283, the prosecutor is free to argue from the evidence and reasonable inferences drawn therefrom that a witness is credible, or that the defendant or another witness is not worthy of belief. *People v Thomas,* 260 Mich App 450, 454-455; 678 NW2d 631 (2004); *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). See also *People v Meissner,* 294 Mich App 438, 456; 812 NW2d 37 (2011) (a prosecutor may not suggest that she has some special knowledge about a witness's truthfulness).

Viewing the challenged remarks in context, it is apparent that the prosecutor was arguing from the evidence why defendant's accounts and testimony were not credible or believable. The prosecutor did not suggest that she had any personal knowledge, beyond the evidence admitted at trial, that defendant was not truthful. Further, it was not improper for the prosecutor to use the harsh term "liar" to refer to defendant. That characterization was supported by the evidence and reasonable inferences drawn from the evidence, and the prosecutor was not required to refrain from using hard language. *People v Ullah*, 216 Mich App 669, 678-679; 550 NW2d 568 (1996).

In addition, the prosecutor's statement, "I don't believe it," was not referring to defendant's testimony, but rather to the credibility of defendant's brother's testimony. At trial, defendant's brother claimed that the police coerced him into falsely stating that defendant was trying to sell a clip to a handgun the day after the offense. It was not improper for the prosecutor to argue that the witness's testimony at trial was not credible because it was not reasonable that the witness would falsely implicate defendant, his brother, for murder. In sum, defendant has not shown any plain error involving the prosecutor's arguments.

Vacated and remanded for a new trial.  We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens