*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEFFREY PAUL REIHER,

Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 343234
Wayne Circuit Court
LC No. 17-006034-01-FC

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of carjacking, MCL 750.529a.[1] The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment. We affirm.

## I. BACKGROUND

On June 28, 2016, the 79-year-old female victim was leaving a grocery store in Redford Township, Michigan, when a man pulled her from her vehicle, threw her to the ground, and drove away in her vehicle. The victim and two eyewitnesses later viewed a surveillance recording from the grocery store and confirmed that it depicted the individual who took the victim's vehicle. The suspect in the video had several visible tattoos on his arms. The recording was released to the media for assistance in identifying the suspect. Defendant's father contacted the police and identified defendant as the suspect in the recording.

The victim's vehicle was recovered in Missouri. DNA obtained from the steering wheel and gear-shift lever matched the DNA of Levy Scoggins, who also resembled the suspect

---

[1] The jury was unable to reach a verdict on additional charges of armed robbery, MCL 750.529, and felonious assault, MCL 750.82, and the trial court declared a mistrial as to those counts. The prosecution later dismissed them.

described by the victim. Scoggins, who lived in Missouri and had no connection to Michigan, was an acquaintance of defendant. At trial, a police officer noted that the tattoos of the suspect in the surveillance video matched defendant's tattoos, but did not match Scoggins's tattoos. The prosecution also used defendant's cell phone records to track his movements from the scene of the carjacking to Missouri. The defense theory at trial was misidentification.

Defendant now appeals, raising issues in a brief filed by appointed appellate counsel and in a *pro se* supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 (Standard 4 brief).

## II. COUNSEL'S ISSUES

### A. SUFFICIENCY OF THE EVIDENCE

Defendant does not dispute that the prosecution presented sufficient evidence to establish that a carjacking occurred, but argues that the evidence was insufficient to establish his identity as the carjacker. We disagree.

An appellate court's review of the sufficiency of the evidence to sustain a conviction should not turn on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). We must view the evidence in a light most favorable to the prosecution. *Id*. at 515. Circumstantial evidence and any reasonable inferences that can be drawn from the evidence may be sufficient to prove the elements of a crime. *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). Any conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

Identity is an essential element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a single witness can be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is a question for the trier of fact to resolve and this Court will not resolve the issue anew. *Id*.

The prosecution presented both direct and circumstantial evidence of defendant's identity as the carjacker. At trial, the victim and Walter Huggins, an off-duty police officer who witnessed the crime, both identified defendant as the person who committed the offense. *Davis*, 241 Mich App at 700. Although the victim and Huggins were not able to identify defendant in a pretrial photographic array, it was up to the jury to determine whether that affected the weight and credibility of their identification testimony. Similarly, any variances between the descriptions they provided to the police and defendant's actual appearance were also for the jury to consider in evaluating their testimony. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005) ("This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses."). Although defendant emphasizes that he has many tattoos on his arms and neck and notes that the victim and witnesses did not describe the perpetrator as having any tattoos, the victim and witnesses also testified that the suspect was wearing a long-sleeved hooded jacket at the time of the carjacking. However, the victim and

Huggins also identified the person shown in the store surveillance video shortly before the offense as the same person who committed the carjacking, and tattoos were visible on the arms of the suspect in the surveillance video.

Furthermore, in addition to the eyewitness identification testimony, the prosecution presented additional evidence linking defendant to the crime. Cell phone records established that defendant's cell phone was in the area of the carjacking at the time of the offense. The victim's car was recovered in Missouri, and the prosecution presented evidence tracking the movement of defendant's cell phone from shortly after the offense and continuing to Missouri, close to where the victim's vehicle was recovered. Photographs obtained from defendant's cell phone also appeared to place defendant in the victim's vehicle during the trip to Missouri.

The record belies defendant's assertion that Scoggins was the more likely carjacker because his DNA was found inside the victim's vehicle. The prosecution presented evidence that Scoggins had no connection to Michigan. And although Scoggins also had tattoos, they were inconsistent with the tattoos of the person depicted in the surveillance video, whom the witnesses had identified as the carjacker. The evidence showed that defendant and Scoggins were friends. Given the cell phone evidence tracking the movement of defendant's cell phone from the vicinity of the carjacking all the way to Missouri, the evidence supports an inference that defendant drove the car there after the carjacking and allowed Scoggins, his friend, to drive it. This also explains why Scoggins's DNA was found on the steering wheel and gear-shift lever inside the vehicle. *Abraham*, 234 Mich App at 656; *Jackson*, 292 Mich App at 587-588.

Viewing this evidence in the light most favorable to the prosecution, it was sufficient to establish defendant's identity as the carjacker beyond a reasonable doubt.

## B. LAY OPINION TESTIMONY

Next, defendant argues that Detective-Sergeant Kevin Crittenden was improperly allowed to testify regarding the suspect's tattoos as depicted in the surveillance video, and how they were consistent with defendant's tattoos but not with Scoggins's tattoos. We disagree.

Because defendant did not object to this testimony at trial, this issue is unpreserved and this Court's review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. After these three criteria have been met, we will only reverse when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and alterations omitted).

MRE 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a)

rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Defendant relies on *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013), in support of his argument that Detective Crittenden's testimony was improper. In *Fomby*, a police officer identified individuals depicted in still photographs taken from a surveillance video recording as the same individuals in the actual video, but did not testify that any of the individuals depicted in either the still photographs or the video was the defendant. *Id.* at 49. This Court held that the police officer testimony "was properly admitted as lay opinion testimony under MRE 701." *Id.* at 50. This Court stated that "it can be inferred from [the officer's] testimony that he viewed the video and the still photos several times in order to draw his conclusions and opinions about the identity of the individuals in the surveillance video and still photos as compared to other individuals depicted in the same evidence." *Id.* at 51. This Court further stated that "it can similarly be reasonably inferred that [the officer's] testimony helped the jury to correctly and efficiently determine whether the two individuals seen earlier in the footage were the same individuals who were involved in the murder later depicted in the video."

In *Fomby*, this Court recognized that when a witness is in no better position than the jury to make an identification from a video or photograph, opinion testimony identifying a person in a video or photograph as the defendant is generally inadmissible as infringing on the jury's role in deciding the defendant's guilt. *Id.* at 52, citing *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993), and *United States v Rodriguez-Adorno*, 695 F3d 32, 40 (CA 1, 2012). This Court concluded, however, that the officer's testimony was not inadmissible because the officer only linked individuals depicted in the video and still photographs as the same person, and the officer did not identify the defendant in the video or still images. *Id.* at 53. Nonetheless, under MRE 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

In this case, Detective Crittenden's testimony was properly considered by the jury. Having personally observed and photographed defendant and his tattoos, he was in a superior position than the jury to offer an opinion whether defendant's tattoos matched those of the suspect in the surveillance video. His testimony was helpful to the jury by pointing out important features of the suspect in the surveillance video for the jury to consider in deciding the suspect's identity. Detective Crittenden's testimony also explained how Scoggins's tattoos differed from those on the suspect in the video, leading the police to eliminate him as a suspect. Detective Crittenden never expressly stated that defendant was guilty of the offense. Under these circumstances, Detective Crittenden's testimony does not qualify as plain error.

## C. EXPERT TESTIMONY

Next, defendant argues that he was denied a fair trial because Detective Crittenden was allowed to provide expert testimony regarding cell phone data and mapping without being qualified as an expert. Defendant acknowledges that there was no objection to the challenged testimony at trial. Accordingly, we again review this unpreserved issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Defendant also argues that his trial counsel was ineffective for failing to object to Detective Crittenden's qualifications to offer this testimony. In order to preserve an ineffective-assistance-of-counsel claim for appellate review, the defendant should make a motion in the trial court for a new trial or evidentiary hearing. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Because defendant failed to do so here, our review is "limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). The burden is on defendant to establish factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Detective Crittenden testified that he reviewed the cell phone records for defendant's phone and also analyzed metadata associated with photographs and other information found on defendant's phone. He explained how he connected photographs to certain locations and time periods to determine that defendant's phone was in Michigan near the time of the offense and left the state shortly thereafter. Detective Crittenden explained that defendant's phone connected to cellular towers near the scene of the crime close to the time it was committed and to additional towers as the phone left the scene and the state. The phone ended up in Missouri, not far from where the victim's vehicle was recovered.

Detective Crittenden's testimony about the cellular data was not offered as expert testimony. And because defense counsel never objected to Detective Crittenden's qualifications, the trial court was not asked to determine if he was qualified to offer the testimony in question.

To the extent that Detective Crittenden's testimony can be characterized as expert testimony, defendant has not demonstrated that an objection to his qualifications would have been successful. Under MRE 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]" During Detective Crittenden's testimony, the prosecutor introduced a report regarding the cellular data from defendant's cell phone. In his testimony, Detective Crittenden explained that there is an identification number for each phone that a carrier uses to identify the phone when it connects to a tower. Detective Crittenden also testified that he obtained records from defendant's cellular carrier, which he provided to the parties, and those records were offered as an exhibit. Detective Crittenden described how he used metadata associated with photographs found on the phone to determine when and where the photographs were taken. He used a program to collect the metadata. Detective Crittenden also explained the data in the service provider's report included longitude and latitude coordinates. Using the records, he determined when defendant's phone connected to certain towers to map the locations of defendant's phone as it moved. The prosecutor offered a series of maps created by Detective Crittenden, and defense counsel stated that he had no objection to the maps. Detective

Crittenden further explained how a cell phone connection is handed off from one tower to the next as an individual is moving with a cell phone.

The record demonstrates defendant and defense counsel knew before trial that Detective Crittenden intended to testify about information obtained from defendant's cell phone, including the maps that Detective Crittenden had prepared to show the locations where the phone connected to different towers as it traveled from near the scene of the offense to Missouri. Detective Crittenden's testimony demonstrated his understanding of cellular telephone records, how to collect and interpret metadata, and how to use tower connections to map a phone's locations. On this record, there is no basis to conclude that Detective Crittenden lacked the education and knowledge to provide the testimony he offered. Defendant has not shown that any of Detective Crittenden's testimony was factually or technically inaccurate. *Id.* Accordingly, defendant has not demonstrated any error, let alone one that is plain.

Defendant has also failed to demonstrate that defense counsel was ineffective for failing to object to Detective Crittenden's testimony regarding cell phone data and mapping. First, defendant has not submitted any offer of proof showing that counsel was unprepared or surprised by Detective Crittenden's testimony. *Hoag*, 460 Mich at 6. For the reasons just discussed, any objection to Detective Crittenden's qualifications would have been overruled. Counsel is not ineffective for failing to raise a meritless objection. *People v Cicotte*, 133 Mich Ap 630, 637; 349 NW2d 167 (1984). Third, the decision whether to object to Detective Crittenden's qualifications was a matter of trial strategy. *Id*. Defendant has not overcome the presumption that counsel made a strategic decision not to object to Detective Crittenden's qualifications because he did not want the jury to learn about Detective Crittenden's knowledge and experience in the area, which may have caused it to give greater weight to his testimony. *Tommolino*, 187 Mich App at 17. Fourth, because defendant has not demonstrated that Detective Crittenden was not qualified to provide the testimony in question or that the testimony was factually or technically inaccurate, defendant has not demonstrated that counsel's failure to object prejudiced him. *Johnson*, 451 Mich at 124.

## D. SENTENCING GUIDELINES

Defendant argues that he is entitled to resentencing because the trial court erroneously scored OVs 1 and 3. While we agree that the trial court erred in scoring OV 3, we nevertheless conclude that defendant is not entitled to resentencing.

When reviewing a scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

The trial court assessed five points for OV 1, which is the appropriate score when a "weapon was displayed or implied" during the offense. MCL 777.31(1)(e). At trial, the victim testified that defendant displayed a knife with a five-inch blade during the offense. Defendant

argues, however, that the trial court should not have scored OV 1 because the jury did not return a guilty verdict on the armed robbery and felonious assault counts, both of which include the use of a weapon as an essential element.

Our Supreme Court recently held in *People v Beck*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 152934); slip op at 2, that, "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." In *Beck*, ___ Mich at ___; slip op at 2-3, the Court held that the trial court erred by relying in part on acquitted conduct to depart from the sentencing guidelines range. The Court explained that trial courts may rely on uncharged conduct using the preponderance-of-the-evidence standard, but when a jury has found beyond a reasonable doubt that the defendant did not engage in certain charged conduct, the defendant is entitled to the presumption of innocence and considering that same conduct at sentencing is fundamentally inconsistent with the presumption of innocence. *Id*. at ___; slip op at 18-19.

This case is distinguishable from *Beck* for the simple reason that the jury did not acquit defendant of the armed robbery and felonious assault charges. In *Beck*, the Court explained that "acquitted conduct has been formally charged and specifically adjudicated by a jury." *Id*. at ___; slip op at 13. In this case, defendant was charged with offenses requiring the use of a weapon, but the jury did not adjudicate those charges; it was unable to return a verdict. Accordingly, the rule announced in *Beck* did not prohibit the trial court from scoring OV 1 if a preponderance of the evidence showed that defendant displayed a knife during the offense. At trial, the victim testified that when she resisted defendant's demands to get out of the car, defendant grabbed her by the shirt and displayed a knife with a five-inch blade. This testimony supports the trial court's assessment of five points for OV 1.

Defendant also argues that OV 3 was incorrectly scored at 10 points. MCL 777.33(1)(d) provides that OV 3 should be scored at 10 points when "[b]odily injury requiring medical treatment occurred to a victim." Five points should be scored if "[b]odily injury not requiring medical treatment occurred to a victim" and bodily injury is not an element of the offense. MCL 777.33(1)(e); MCL 777.33(2)(d). Zero points are appropriate if no physical injury occurred to a victim. MCL 777.33(1)(f). "[B]odily injury encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v Gibbs*, 299 Mich App 473, 492; 830 NW2d 821 (2013) (quotation marks omitted).

At trial, the 79-year-old victim testified that she was not injured during the offense. But the evidence indicated that defendant threw her from her vehicle onto the ground, dragged her alongside the car, and ripped her clothing during the offense. According to the presentence report, her finger was also sliced at some point during the incident. An ambulance arrived and she was transported to a hospital to be "checked out." Another officer testified that the victim was disorientated and confused and she had injuries that required being treated by the fire department; however, he could not recall what her injuries were and reaffirmed that she was transported to the hospital.

Although the victim was taken to the hospital, there is no evidence on the record that she received any "medical treatment" due to any of the injuries she suffered. MCL 777.33(1)(d). We also have no indication if the injuries being treated by the fire department were bodily or

otherwise. The evidence instead strongly indicates that the victim was taken to the hospital as a precautionary measure, due to her disorientation and confusion, and there was no evidence that she required or received any medical treatment while there. The evidence, at best, supports an OV 3 score of five points, as the victim sustained a bodily injury, namely the cut on her finger, but it did not require medical treatment. MCL 777.33(1)(e); *Gibbs*, 299 Mich App at 492; see also *People v Armstrong*, 305 Mich App 230, 246; 851 NW2d 856 (2014) ("Were we to construe OV 3 in a way that would allow courts to assume that all bodily injuries require medical treatment, when there is no evidence that treatment was necessary, it would render MCL 777.33(1)(e)—which concerns injuries that do not require medical treatment—surplusage.").

Although we believe this evidence does not support the trial court's assessment of 10 points for OV 3, this error does not require resentencing. Defendant's total OV score was 30 points, placing him in OV Level II (20–39 points). MCL 777.62. Reducing his score by 5 points would not change his placement in OV Level II. *Id.* Thus, although we find error here, defendant has not demonstrated that he should be resentenced. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

### III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises nine additional issues in his Standard 4 brief. Defendant concedes that all of these issues were not preserved in the trial court. We review these unpreserved, constitutional or nonconstitutional, issues for plain error that affected defendant's substantial rights. *Carines*, 460 Mich at 763-765.

### A. DEFENDANT'S DISTRICT COURT MOTIONS

Defendant first argues that his right to due process was violated because he filed *pro se* motions in the district court, which it did not decide before it bound him over to the circuit court for trial. Although district courts have limited jurisdiction involving felonies, they may still decide motions regarding discovery and conduct evidentiary hearings to decide issues as necessary to conduct a proper preliminary examination. *People v Laws*, 218 Mich App 447, 451-455; 554 NW2d 586 (1996). Otherwise, questions regarding due-process violations or matters related to trial should be raised in the circuit court. *Id.* at 453.

Defendant has not explained how decisions on his motions were necessary to a proper preliminary examination. Defendant has not produced copies of the actual motions, but it is not apparent from the titles of the motions—"Motion for Disclosure of Agreements or Concessions to Witnesses," "Motion for Discovery of Witnesses Criminal Histories," and "Motion to Suppress Evidence/Evidentiary Hearing"—that they were critical to the preliminary examination, where the only witness was the victim. *Laws*, 218 Mich App at 451-455. Moreover, the district court's failure to decide the motions did not prevent defendant from pursuing them in the circuit court. MCR 6.110(D)(2). Accordingly, defendant has not demonstrated that the district court's failure to decide the motions violated his right to due process or affected his substantial rights. *Carines*, 460 Mich at 765.

## B. SEARCH WARRANT

Next, defendant argues that the police illegally searched his cell phone without a search warrant and that defense counsel was ineffective for failing to file a motion to suppress the evidence obtained from his phone. The record does not support defendant's argument.

At trial, Detective Brian Brashers, a Missouri law enforcement officer, expressly testified that after defendant's phone was recovered from an abandoned van in Missouri, he applied for and obtained search warrants in Missouri "for the contents of the phone as well as the records of the service provider." That information was compiled into reports, turned over to the Redford Township Police Department, and admitted at trial. Defendant seems to suggest that Detective Crittenden conducted an independent search of the phone, but it is apparent from the record that his testimony was based on his review of the information in the reports received from the Missouri officials, which was obtained via search warrant. In sum, the record does not support defendant's argument that his phone was illegally searched without a warrant.

Moreover, because the record does not support defendant's claim of an illegal search, defense counsel was not ineffective for not filing a motion to suppress. Any motion would have been futile. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## C. SUPPRESSION OF EVIDENCE

Defendant argues that the prosecution violated his right to due process by withholding exculpatory evidence, and that defense counsel was ineffective for failing to pursue this issue in the trial court. We disagree.

The prosecution violates a defendant's right to due process under US Const, Am XIV, by suppressing material evidence favorable to the defense. *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998). To establish a *Brady* violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence was material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). The prosecution bears responsibility for evidence within its control, even evidence unknown to it, and even where the nondisclosure was inadvertent and unintentional. *Id.* at 150. In *Chenault*, 495 Mich at 150-151, the Court addressed the element of materiality, stating:

> To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This standard does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . . The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence. In assessing the materiality of the evidence, courts are to consider the

suppressed evidence collectively, rather than piecemeal. [Citations and quotation marks omitted.]

Stated another way, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 157.

The record shows that defendant made a pretrial request for a surveillance recording of Scoggins in Missouri. The prosecutor advised the court that he did not believe the recording was relevant, even so, he would ask Detective Brashers to bring the recording with him when he appeared at trial. At trial, Detective Brashers did not recall receiving a request for that recording. Defendant did not further pursue the issue below. On this record, defendant has not shown that the prosecution actually suppressed the evidence.

Furthermore, defendant has not demonstrated that the Missouri surveillance recording of Scoggins was material. Defendant suggests that the recording could have been used to show that Scoggins's appearance was similar to the suspect described by the victim. However, other photographs of Scoggins were introduced at trial to enable the jury to determine if he resembled the suspect in the store surveillance video or described by the victim. Defendant does not explain why these other photos were inadequate for this purpose. Because other photos of Scoggins were introduced to enable the jury to compare his appearance to that of the suspect, defendant has not demonstrated that the Missouri surveillance recording was material. *Chenault*, 495 Mich at 150-151.

Similarly, given the availability of other photos of Scoggins for the jury to use to compare his appearance to the suspect, it was not objectively unreasonable for defense counsel to fail to pursue this issue. *Pickens*, 446 Mich at 338. Accordingly, we reject this claim of error.

D. PHOTOGRAPHIC EVIDENCE

Next, defendant argues that he was denied a fair trial by the admission of a photograph that depicted him in a prison uniform at a correctional facility.

Preliminarily, we reject defendant's argument that admission of the photo violated MRE 404(b)(1). That rule applies only to "[e]vidence of other crimes, wrongs, or acts[.]" The photograph was not evidence of some other crime, wrong, or act. The photograph was relevant because it depicted the tattoos on defendant's arms, which were material to his identification as the perpetrator. Although MRE 403 allows a court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice," it is not apparent that the photograph was required to be excluded under this rule. The information identifying the photograph as a correctional facility did not indicate that defendant was serving a prior prison sentence, and the testimony regarding the photo did not refer to defendant as a prisoner, or to the location as a correctional facility.

Further, during trial, defendant's own father testified that he last saw defendant "at a jail somewhere." He also testified that defendant was arrested in August 2016 and that telephone calls from defendant were placed from jail or prison, possibly from Texas. At least one of the

calls played for the jury indicated that the call from defendant was being made from "Jeffery[,] [a] prisoner at the Michigan Department of Corrections." The jury also heard that defendant was arrested in Texas for leaving the scene of an accident. When defense counsel questioned the victim about defendant's appearance at the preliminary examination, she mentioned that defendant was wearing prison clothing. In light of this other evidence, from which the jury would have been aware that defendant had been incarcerated before trial, the admission of the challenged photograph, which was probative of defendant's identity as the perpetrator, but did not otherwise include any references to a jail or prison facility, does not qualify as plain error.

Moreover, it is plain that the photograph did not unduly influence the jury because it declined to reach a verdict on two of the three counts. This indicates that the jury was not influenced by the circumstances under which defendant was photographed. Accordingly, defendant has also failed to show that admission of the photograph affected his substantial rights.

## E. FALSE TESTIMONY

Defendant next argues that the prosecutor knowingly presented false testimony at trial, or failed to correct false testimony, with respect to whether Huggins viewed the surveillance footage from the grocery store with Detective Crittenden. We disagree.

It is well established that a prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). A prosecutor has a duty to correct false evidence when it is presented. *People v Lester*, 232 Mich App 262, 276-277; 591 NW2d 267 (1998), overruled in part on other grounds *Chenault*, 495 Mich at 152.

Huggins admitted that he viewed the surveillance video on the television news. But, as defendant notes, Huggins initially denied having viewed the surveillance footage with Detective Crittenden, which defendant argues was false, because an investigator's report prepared by Detective Crittenden indicated that he had reviewed the surveillance footage with Huggins. Although Huggins initially denied reviewing the surveillance video footage with Detective Crittenden, Huggins later corrected his testimony to state that he did not recall if he reviewed the surveillance footage with Detective Huggins. Thus, to the extent that Huggins's initial denial could be considered false, he corrected that testimony.

As for Detective Crittenden, during defense counsel's cross-examination, he attempted to show that Detective Crittenden had Huggins view the surveillance footage when he asked Huggins to view the photographic array. That was not inconsistent with the information in Detective Crittenden's investigator's report. Again, Huggins ultimately testified that he could not recall whether he viewed the surveillance footage with Detective Crittenden. Thus, there was no false impression left with the jury that Huggins never saw the surveillance footage a second time with Detective Crittenden. Accordingly, defendant cannot demonstrate that there was any error in either of the witnesses' testimony.

## F. IMPROPER IDENTIFICATION PROCEDURE

Next, defendant argues that Huggins's in-court identification of defendant as the carjacker was impermissible because it was the product of an unduly suggestive pretrial identification procedure. More specifically, defendant argues that the identification procedure was improper because Detective Crittenden had previously shown Huggins the surveillance recording footage from the grocery store. We disagree.

A pretrial identification procedure can violate a defendant's right to due process if it was so impermissibly suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), overruled in part on other grounds by *People v Hickman*, 470 Mich 602 (2004). The burden is on the defendant to prove that an identification procedure was impermissibly suggestive. *Id.*

Review of the record shows that Huggins viewed the store surveillance recording on the television news before he viewed a photographic array and identified another person, not defendant, in that array. Thus, the surveillance footage could not have influenced Huggins's identification of defendant. Although Huggins identified defendant at trial, that occurred under circumstances where he was able to view defendant in person, as he had on the day of the offense. While the jury may have had reason to question the credibility of Huggins's in-court identification of defendant in light of his prior identification of another suspect, it was ultimately up to the jury to resolve the reliability and credibility of his in-court identification. *Davis*, 241 Mich App at 700 ("The credibility of identification testimony is a question for the trier of fact . . . ."). Thus, any error did not affect defendant's substantial rights and defendant cannot demonstrate that the identification procedure here was impermissibly suggestive. *Carines*, 460 Mich App at 763; *Kurylczyk*, 443 Mich at 302.

## G. PLEA NEGOTIATIONS

Defendant next argues that defense counsel was ineffective for failing to properly advise him of the strength of the prosecution's case before defendant rejected the prosecution's plea offers. Defendant argues that he did not receive competent advice to enable him to make an informed decision whether to accept or reject the prosecution's pretrial plea offers because defense counsel did not advise him of all the evidence the prosecution intended to offer against him at trial.

"[A] defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Pennington*, 323 Mich App 452, 461; 917 NW2d 720 (2018) (citation and quotation marks omitted). "In the context of pleas, 'a defendant must show the outcome of the plea process would have been different with competent advice.'" *Id.* (citation omitted).

The record does not contain evidence regarding the advice or discussions defense counsel had with defendant before defendant rejected the plea offers. But, during a pretrial hearing, defendant admitted that he was satisfied with the advice of counsel on the matter of whether he would take a guilty plea. And defendant stated that his defense counsel advised him of "everything I need[ed] to know about the offer." Thus, it is not apparent from the record that defense counsel failed to competently advise defendant.

-12-

Defendant acknowledges this record deficiency and requests that this Court remand this matter for an evidentiary hearing. However, defendant has not submitted an affidavit or other appropriate offer of proof showing that a remand is justified. In support of his request for a remand, defendant relies on a sentencing memorandum in which he stated that he did not have an opportunity to see and hear the contents of three disks that contained the prosecution's evidence until after the trial was underway. But defendant's ineffective-assistance claim is dependent upon the competency of the advice he received from defense counsel before rejecting the prosecution's plea offers, and defendant has not submitted any evidence detailing what advice or discussions he had with counsel that led to his decision to reject the offers. *Hoag*, 460 Mich at 6. Accordingly, defendant has not shown that remand for an evidentiary hearing is warranted. *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995) (stating that there must be a factual dispute relevant to the requested evidentiary hearing in order to justify a remand).

## H. ALLOCUTION

Defendant argues that he is entitled to resentencing because the trial court violated his right of allocution at sentencing. We disagree.

MCR 6.425(E)(1)(c) provides that, at sentencing, the trial "court must, on the record . . . give the defendant . . . an opportunity to advise the court of any circumstances [he] believe[s] the court should consider in imposing sentence." The trial court must strictly comply with this rule and must separately ask the defendant whether he wishes to address the court before imposing sentence. Failure to follow this rule requires resentencing. *People v Kammeraad*, 307 Mich App 98, 149; 858 NW2d 490 (2014).

Before sentencing, defendant prepared an 11-page, hand-written sentencing memorandum that he filed with the court. At sentencing, the trial court specifically asked defendant if he had anything to say before the court imposed sentence. Defendant had another written statement, not his sentencing memorandum, that he began to read. The court interrupted defendant as he was reading because he was arguing issues related to his trial, not sentencing. Earlier in the hearing, defendant had to be removed from the courtroom and the court adjourned the matter because defendant would not remain silent and allow his attorney to speak for him with respect to various issues.

The record shows that the trial court gave defendant the opportunity to address the court regarding *sentencing*, and only prevented him from addressing matters related to his trial. Therefore, the trial court did not violate MCR 6.425(E)(1)(c), which requires the court to allow a defendant "an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence." The trial court offered defendant three or four opportunities to speak only about his sentencing and warned him that he could not speak about trial matters, such as his guilt or innocence or any ineffective-assistance-of-counsel claim he wished to raise. Thus, the record demonstrates that trial court did not violate defendant's right of allocution.

Further, the record belies defendant's contention that the trial court did not read his sentencing memorandum before imposing sentence. At sentencing, the trial court specifically stated, "[F]or the record, I would like to acknowledge [defendant's] sentencing memorandum

dated January the 2nd, 2018 and I . . . have read it in its entirety." Accordingly, defendant is not entitled to resentencing based on any alleged violation of his right of allocution.

## I. RIGHT TO A TRIAL

Lastly, defendant argues that he is entitled to be resentenced because the trial court punished him for exercising his right to a trial by imposing a greater sentence than what he was offered during the plea-bargaining process. Once again, the record belies this claim.

It is well-established that a court cannot punish a defendant for exercising his right to a trial. *Pennington*, 323 Mich App at 467. In this case, defendant received plea offers that would have resulted in the dismissal of his habitual-offender charge and included a minimum sentence from 13 to 16 years. When defendant rejected the last offer shortly before trial, he acknowledged that he was facing a possible life sentence as a fourth-offense habitual offender if he was convicted at trial. At the time of sentencing, defendant's guidelines range was 126 to 420 months as enhanced for his fourth-offense habitual offender status. The trial court sentenced defendant within this range to a term of 25 to 50 years in prison. In doing so, the trial court explained that defendant's past criminal history demonstrated that he could not conform his conduct to society's standards, that he had preyed on an elderly victim during this offense, and that his conduct was "outrage[ous]" and "distasteful."

Although the trial court imposed a sentence in excess of what defendant was offered as part of a plea deal, that does not establish that the court penalized defendant for exercising his right to a trial. The plea offers provided defendant with an opportunity for a lesser sentence, but it is not impermissible to encourage a guilty plea by offering substantial benefits in return for a plea. *Pennington*, 323 Mich App at 468. The plea offer would have included dismissal of the habitual-offender charge, which would have significantly reduced defendant's potential exposure. Moreover, defendant rejected the final plea offer with knowledge that he was facing a potential life sentence if he was convicted at trial. At sentencing, the prosecutor emphasized defendant's extensive criminal history when requesting a guidelines sentence of 25 to 50 years. Similarly, the trial court referred to the facts of the case and defendant's criminal history when it imposed a sentence within the guidelines range. Nothing in the record suggests that the court punished defendant for exercising his right to a trial. Therefore, we reject this claim of error.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica

-14-